Bentley Kassal, J.
This is a summary proceeding in which petitioner landlord seeks a final judgment awarding possession to landlord, after having terminated the statutory tenancy of respondent tenant upon the ground that the premises are over-occupied in violation of section D26-33.03 of the Housing Maintenance Code (Administrative Code of City of New York, eh. 26, tit. D, § D26-1.01 et seq.) 'and that landlord is subject to civil and criminal penalties by reason of such overoccupancy (Administrative Code, <§ 1)26-52.01).
The tenant’s defenses represent very carefully considered and unique objections in this type of proceeding, including inter alia, that there was an unconstitutional search by a New York City Inspector of a residence in violation. ,of the Fourth Amendment to the United States Constitution, and that the basic housing policy of the City of New York has been altered so as to exclude overcrowding as a basis for eviction proceedings. These are very novel points which appear not to have been the subject of judicial determination in this court.
Landlord presented evidence at the trial consisting basically of the testimony of an Inspector of the Department of Bent and Housing Maintenance of the City of New York and of the superintendent of the building. The inspector testified that there were two recorded violations for overcrowding placed against this apartment and building as a result of his inspections on May 16, 1967, asnd more recently on June 16, 1970. He stated that he had been admitted to the premises on June 16, 1970 by a woman in the apartment in the presence of the tenant, whom he saw in bed in the next room and who witnessed the same. This woman gave him the names and ages of the occupants of the apartment, and her total came to 7 persons as defined by the Housing Maintenance Code (“over the age of four years”) and one child under 4 (§ D26-1.07, subd. 5).
He then proceeded to measure the rooms and stated that, according to section D26-33.03 of the code, the maximum number of adult occupants permitted in an apartment of such size was 4. Accordingly, he reported a violation. The official record of building violations was placed in evidence. The inspector testified this was one of the “ hazardous conditions ” listed at the present time and for many years past by his department and that the landlord is the only party prosecuted for such violations, never the tenant.
Thereafter the building superintendent testified as to the number of occupants of the .apartment, based upon his own independent knowledge, and that he had observed 6 persons living there plus one baby.
*627 Upon cross-examination, an officer of the landlord stated that there were only 3 occupied apartments in this building and. that the remaining 17 apartments were vacant.
No witnesses were called by tenant, nor was any other evidence presented that the premises were not in fact overcrowded, although .the tenant herself was in court during the entire trial. The tenant rested at the end of landlord’s case, and made a motion for judgment dismissing the petition on these grounds:
(1) Overcrowding, as an illegal occupancy, is no longer the basis for eviction unless an order has been issued by a city agency .requiring the tenant to va'cate, and the present policy of the City of New York is not to evict for overcrowding.
(2) The testimony of the building inspector as to the apartment occupants was based upon a conversation which he had with the person who admitted him to the apartment, and not with the tenant herself. Therefore this testimony is hearsay and inadmissible.
(3) The Fourth Amendment to the United States Constitution precludes an inspection ,of premises without a search warrant unless there has been an express waiver of this privilege. Therefore, the inspector’s testimony as to the square footage of the apartment is inadmissible sin'ce the tenant did not waive her Fourth Amendment privilege against this unlawful invasion of her home.
I hereby decide that the above objections are not applicable to the case at bar, for the following .reasons:
Overcrowding is determined in accordance with the formula set forth in section D26-33.03 of the Housing Maintenance Code, which provides that the maximum number of adult persons over four years of age who may occupy an apartment in a Class A or Class B multiple dwelling is determined by dividing the total livable square footage area of the apartment, including the kitchen area, by 80 square feet. Overcrowding constitutes an illegal occupancy for which the landlord is subject to civil and criminal penalties. The Bent and Eviction Begulations (§ 52, subd. 3) and the New York City Administrative Code (§ Y51-6.0, subd. a, par. [3]) provide that it is grounds for eviction.
Overcrowding has been classified by the Housing and Development Administration as a hazardous condition,, and evidence was presented to that effect (Department of Buildings, Division, of Housing, Bevised List of Hazardous Conditions, dated August 26, 1957; and Department of Buildings, Directive No. 2-1963, dated May 27,1963).
A further refinement in the definition of illegal occupancy was made by Local Law No. 30 of 1970. Section 8 of this law amends *628 section Y51-6.0 (subd. a, par. [3]) of the code to provide in substance that, where there is an illegal occupancy and the landlord is subject to civil or criminal penalties therefor, in order to qualify as a ground1 for eviction under this section, there must be ¡an order from the responsible department or agency requiring the tenant to vacate .the building ‘‘ or ” such occupancy must “ result from an act, omission, or situation caused or created by the tenant ”.
The tenant contends that the ‘ ‘ law of overcrowding ’ ’ has been amended by Local Law No. 301 so that “ only an order requiring the tenants to vacate (a ‘ vacate order ’) would be sufficient basis for the landlord to begin eviction proceedings.” Further, tenant states: “Now only the Department which issues a violation, not a landlord, may determine that the violation constitutes such a hazard that nothing less than a vacate order is required. And in those instances the vacate order is issued directly to the tenant, not to the landlord as was the notice of violation in our o'wn Case.”
The tenant’s contention that the above amendment has changed the city’s policy in regard to eviction for illegal occupancy is not borne out by the law cited, and the tenant does not give any legal authorities in support of this proposition.
The 1970 amendment continues to permit the landlord to commence eviction proceedings without a ‘ ‘ vacate order ’ ’ where the illegal occupancy or overcrowding is caused or created by tenant. A careful examination of this revised section clearly demonstrates that there are two separate and alternative bases for eviction of a tenant for illegal occupancy. The first is a departmental or agency order requiring tenants to vacate; the second states “ or * * * such'occupancy for such building or such ¡violations relied on by the landlord result from an act, omission or situiati'on caused or created by the tenant ”.
There was clear, uncontradicted testimony that at least 6 adults and 1 eight-month-old baby were living in the premises. This testimony was given by the building superintendent on the basis of his personal knowldge, as well as by the city inspector on the basis of what he had been told in tenant’s presence.
The issue, therefore, is simply whether the overcrowding herein is an “ act, .omission, or situation caused or created by tenant ’ ’ within the definition of the second ground for eviction for illegal occupancy. Clearly it is, since the tenant alone is responsible for the overcrowding.
Furthermore, if tenant’s contention were followed, we find these anomalous situations: (a) Where there is a violation due to overcrowding which results in a fire hazard, the landlord *629 might be subject to prosecution for criminally negligent homicide, as defined by sections 125.00 'and 125.10 of the Penal Law (see People v. Nelson, 309 N. Y. 231; Hampton v. Smith, 3 Misc 2d 460, 466; also Shapiro v. Collins, 12 Misc 2d 71). (b) Where a code violation has been placed against the building for overcrowding, as here, the landlord is responsible for such violation in the Criminal Court, and yet he would be powerless to cure the condition since he could not take eviction action to eliminate such tenant-caused or created violation. As a matter of fact, in our case, the inspector stated that he had recommended criminal action against the landlord on these violations, and the case is before the Criminal Court. He also said that it is departmental policy not to prosecute tenants for overcrowding and not to issue ‘ ‘ vacate orders ’ ’ directed to the tenant.
Therefore, I hold that the basic statutory policy of the City of New York regarding overcrowding or over occupancy has not been changed by Local Law 30 of 1970 so as to preclude the instant proceeding.
In regard to the objection that the testimony of the city inspector was hearsay, it is important to bear in mind that, in this regard, the only testimony presented by this witness was to the effect that, after he was admitted to this apartment, the woman who admitted him proceeded to answer his questions about the names and ages of the occupants of the apartment. At that time, the tenant was about 10 feet away from him, and he did see her through the open doorway and, although the conversation was in the kitchen, it was in the proximity of the tenant.
Tenant 'argues that all ,of this testimony regarding the occupants is heaisay and, therefore, inadmissible. In support of this .contention, two cases are cited to prove that the statements by the unknown third party do not constitute adoptive admissions, because landlord did not prove these statements were fully heard by tenant or in a language understood by tenant. These cases are distinguishable.
People v. Dziobecki (3 N Y 2d 997) is a criminal case. The statements made by defendant’s wife in his presence in the course of a social Conversation were not ¡made under circumstances that a failure to deny them constituted an admission of their truth, and there was no evidence that 'defendant had heard the remarks. In our case, the inspector stated that the conversation with the other woman was in the presence of tenant. People v. Lewis (238 N. Y. 1), also cited, involves a defendant who, as .the trial court found, didi not know German, which was the language of the declarant’s alleged ¡statements. In our case, we have absolutely no evidence from tenant as to which l'an *630 guages the tenant, who has lived there for several years, at least, understands.
But it is not essential to regard this as the critical issue, since there was additional, undisputed testimony by the superintendent of the bulding as to the names and ages of the occupants of this apartment, which testimony was based upon his direct observation. The superintendent saw the occupants on numerous occasions ,in the hallways and also in the apartment when he had been called and indeed been invited in by the tenant to make apartment repairs to the lights, toilet, and to check complaints about rats ,and a gas leak. Clearly, therefore, his testimony was not hearsay and, again, not controverted.
The third argument advanced by tenant was that the action of the city inspector in entering the apartment without a waiver by tenant of the Fourth Amendment privilege constitutes an unlawful search and his entire testimony should be stricken on that basis. I do not agree with this objection.
In essence, tenant’s position is that there must be a search warrant for a code enforcement inspection of a residence unless there was a waiver of such by tenant. In support, tenant cites the 1967 decision of the Supreme Court in Camara v. Municipal Court (387 U. S. 523) pertaining to a 'residence, and the companion case of See v. City of Seattle (387 U. S. 541) pertaining to commercial property.
In the Camara and See cases, the inspectors had attempted to make routine inspections, and the occupants in both instances had refused entry to the premises to the inspectors without a search warrant. The Supreme Court clearly enunciated the principle that, in the instance of '.the occupant’s refusal to admit the inspector, a search warrant would be required to gain access (387 U. S. at p. 540). At pages 539-540, the court said: “ nothing we say today is intended to foreclose prompt inspections, even without a warrant, that the law has traditionally upheld in emergency situations * * * Moreover, most citizens allow inspections of their property without a warrant. Thus, as a practical matter ,and in light of the Fourth Amendment’s requirement '.that :a warrant specify the property to be searched, it seems likely that warrants should normally be sought only after entry is refused unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry. Similarly, the requirement of a warrant procedure does not suggest any change in what seems to be the prevailing local policy, in most situations, of authorizing entry, but not entry by force, to inspect.” (Emphasis added.)
*631 This language indicates that the requirement for a search warrant only applies to situations where the tenant has refused entry to the inspector. The Supreme Court makes it clear that inspections without warrants, as before, are lawful if tenant does not refuse access or if there is an emergency situation. There i's nothing either directly or inferentially in either the Camara or the See case to the effect that the proponent of the inspector’s testimony must prove actual consent by the tenant or a waiver by the tenant with full knowledge of the protection of the Fourth Amendment. If anything, the above-emphasized language of the decision is to the contrary, in asserting that it “ does not suggest any change in * * * prevailing lo'cal policy * * * of authorizing entry, but not entry by force, to inspect” (p. 540).
In our case the inspector stated he was granted permission to enter the premises after he had identified himself and asked for permission to enter. Again, it is significant that there was no testimony to the contrary on the question of this consent. He further testified that he had visited the premises on some occasions previously and that, on the last occasion, he measured the various rooms in the apiartment, including the room in which tenant herself wias in bed.
This was an Administrative Code enforcement inspection, and to require the city building inspector, after asking permission to enter, to give the tenant Miranda or other constitutional warnings, would be unreasonable and not required under the circumstances, especially since this- is a civil and not a criminal proceeding.
We must take cognizance of the fact that since May, 1967, there had been a long-standing violation which is actually an administrative finding of overcrowding in this apartment and that this same code violation presumably continued. This violation was introduced in evidence as part of the special list of violations for this building (item 108). The description of the 1967 violation also indicates that the legal occupancy was 4; i.e., that the apartment was less than 400 square feet. The tenant offered no evidence that the physical set-up or capacity or occupants of the apartment had changed or that the 1967 violation had been cured.
The 1967 report of a violation, therefore, is prima facie evidence of the overcrowding. In Ehrenfeld v. Ward (19 Misc 2d 961), the Appellate Term, First Department, held that proof of a code violation is evidence of an illegal use of premises, and unless tenant contested same, no issue was raised. The court *632 stated (at p. 962): “ 'Such departmental action is presumptive evidence that the physical conditions of the apartment did not permit of legal occupancy by the number of people living there. The tenant did not contest this fact. See, also, 86 Near Second Ave. Corp. v. Woods (140 N. Y. S. 2d 387 [App. Term, 1st Dept.]).
This uncontested departmental finding of a violation in 1967, together with uncontroverted testimony that overcrowding in the same apartment still exists, is a sufficient basis for an eviction proceeding.
The tenant has also raised another issue which should be disposed of, namely, landlord’s true motivation. It is obvious that the landlord is seeking to rid the building premises of all the tenants, since testimony was presented that only 3 apartments, including the apartment in issue, are occupied out of a total ■ of 20 apartments. I do not condone, and indeed I am opposed to, the use by landlord of the instant proceeding as a means of circumventing the relocation and other requirements of the rent regnlations, but the court is nevertheless powerless on that basis to dismiss this proceeding.
In Chase Nat. Bank v. Tawaga (204 Misc. 246), the Appellate Term, Second Department, held in a Per Curiam decision: “ Tenants’ occupancy of the premises is in violation of law. It became the landlords’ duty, ¡after due notice from the department of housing and buildings, to remove the tenants. * * *
The question of the landlords’ motives or good faith is not germane in a proceeding of this character. ’ ’ (Citations omitted.) (See, also, Shapiro v. Collins, 12 Misc 2d 71, supra.) If the tenant is responsible for causing an illegal occupancy and the landlord may be penalized thereby, the landlord may proceed to evict the responsible tenant, even if by such eviction, his personal ends are simultaneously served. (See Matter of Henderson [Gillroy], N. Y. L. J., Aug. 4, 1952, p. 190, col. 2; see, also, Chase Nat. Bank v. Tawaga, supra.) The Appellate Term, First Department, has also held that a landlord cannot waive this duty, even if he or his predecessor landlord has consented to the unlawful occupancy. (Revon Realty Corp. v. Fixler, 66 N. Y. S. 2d 30; also Six-Ten Corp. v. Oppell, 186 Misc. 628.)
As a last point, I am unable to overlook the failure of the tenant to testify or present one shred of evidence on her own behalf as to any of the factual circumstances relating to the various key issues presented; namely, the request by the inspector for admission, the consent or lack of consent to his entry and measurement, the conversation allegedly had in her presence, the present number of occupants of the apartment, the *633 testimony of the building superintendent regarding the same, whether the 1967 code violation for overcrowding has been cured.
It is a general rule in a civil case that ‘ ‘ The failure to call a witness within the control of a party may justify giving greater weight to the testimony already in the case, but it never authorizes a (trier of fact) to speculate as to wh'at the uncalled witness would testify to.” (Milio v. Railway Motor Trucking Co., 257 App. Div. 640, 641. See, also, Noce v. Kaufman, 2 N Y 2d 347.)
The landlord has proved that the apartment has a legal occupancy of 4 persons and that more than that number resided there at the time that eviction proceedings were initiated and at the time of trial; moreover, insofar as an inspector from the Department of Bent and Housing Maintenance did make such finding of fact and consequently did report an illegal occupancy, it seems clear that the landlord is subject to criminal penalties on ¡account of the over occupancy of the tenant’s apartment.
Undoubtedly, the City of New York is confronted with a crisis situation in the area of housing as a result of the rapid deterioration of existing housing as well as the accelerating decrease in the rate of housing construction.
Possibly, legislation should be enacted redefining 1 ‘ maximum permitted occupancy ”, reducing the square footage, and/or changing the definition of 11 illegal occupancy ’ ’ in light of the urgency of the present emergency. This cannot be done by judicial fiat. It is not the province of this court to make these legislative determinations, irrespective of the court’s understanding of and sympathy for the tenant’s problems.
Obviously overcrowding in some circumstances may be very dangerous as well as unhealthy as, for example, if 20 persons were to live in an apartment with legal “ living area ” for 4 persons. But what are we to do when confronted with a situation where 5, 6, or 7 persons (as in this case) live in an area legal for 4 persons ?
It is not within the power of the court in a summary proceeding to revise the Administrative Code so as to substitute its judgment for the judgment of the legislative or executive branch in the absence of a constitutional challenge to the code.
I, therefore, find that the landlord is entitled to judgment herein, and all reserved motions are so decided. There shall be a 90-day stay in the issuance of the warrant.