OPINION OF THE COURT
Martin Evans, J.
In this landlord’s action for, inter alia, ejectment, declaratory judgment and a permanent injunction, defendant tenant moves for summary judgment dismissing the complaint. At issue is whether the plaintiff landlord, having voluntarily entered into a renewal lease with defendant, can here assert as a breach of tenancy, circumstances of occupancy which existed at the time of the renewal.
Defendant has continuously occupied the subject apartment, by a succession of residential leases, since 1968. In 1971 she gave birth to a daughter who has resided with her there ever *862 since. Plaintiff subsequently acquired the building.[1] The parties last executed a renewal lease in 1983, for a three-year term. In July 1984 plaintiff notified defendant that she was allegedly in violation of the lease provision that requires the tenant to comply with applicable laws and refrain from "objectionable conduct.” The substance of the alleged lease violation, the predicate for this action subsequently commenced in January 1985, is the alleged illegal occupancy of tenant’s daughter. Plaintiff contends that the presence in the apartment of the daughter violates Administrative Code of the City of New York § D26-33.03, which provides, in pertinent part, as follows:
"[a] No dwelling unit shall be occupied by a greater number of persons than is permitted by this section.
"(1) Every person occupying an apartment in a Class A or Glass B multiple dwelling or in a tenant-occupied apartment in a one- or two-family dwelling shall have a liveable area of not less than [eighty] square feet.”
Thus, in order to ascertain whether the occupancy is permitted, the square footage of the apartment must be divided by the number of occupants. In making the computation, the area of a kitchen is included; that of a bathroom is not. (Administrative Code § D26-33.03 [a] [1].) A child below the age of four is similarly excluded. (Administrative Code § D2633.03 [d].) Accordingly, an owner violates the section if he rents the apartment when the quotient is less than 80 square feet.
The maximum occupancy provisions of the Housing Maintenance Code (Administrative Code § D26-1.01 et seq.) were intended to prevent practices common earlier in the century, when landlords overcrowded cramped tenements and rooming house rooms with large numbers of tenants. As declared in a predecessor to the current statute: "By reason of increases in population, heavy immigration into the city, growth of the trend toward more intensive occupancy of existing housing accommodations and other factors, applicable provisions of existing law [did] not afford adequate protection in the City against excessive occupancy in multiple dwellings, overcrowding of rooms, fire and health hazards, unsatisfactory provisions as to sanitation, insufficient provisions for light and air *863 and other undesirable housing conditions.” (Administrative Code former § D26-1.03.)
Ultimate enforcement responsibility is vested in the city, which has the duty of inspection; upon a finding of violation, civil, criminal and equitable sanctions can be imposed. (See, Administrative Code § D26-51.01 et seq.; § D26-52.01 et seq; § D26-53.01 et seq.) Initial responsibility for preventing violations, however, is imposed on- the landlord, who is given the right to make a written demand that the tenant set forth, in an affidavit, the names and relationship of all occupants, including minors. (See, Administrative Code § D26-33.03 [c].) Not only does this procedure place the tenant on notice as to the law’s requirements; it creates a permanent record of the landlord’s inquiry and the tenant’s response.
Thus, while imposing a duty on the owner, the overcrowding statute grants him a significant right; while seeking to protect the tenants from landlord-caused violations, the statute enables the landlord to protect himself from tenant-caused violations.
Placing this responsibility on the landlord, while granting him the right to inquire, not only advances the legislation’s protective purposes; it squares with logic and common sense. It is the owner, not the tenant, who is in a better position to know both the arcane requirements of the Administrative Code and their application to each specific apartment. It is the owner, not the tenant, who is more likely to have access to exact building plans and accurate room measurements. Concomitantly, it is the owner who has an important interest in ascertaining the correct number and identity of all occupants.
In the case at bar, there is no evidence that the occupancy at issue has either been held violative of the statute by any competent city administrative agency or has generated a complaint either to the landlord or any official agency which could result in the imposition of sanctions in the future. Neither is it claimed that the defendant’s occupancy poses a danger to safety or health, or violates any other provision of law.
What is sharply in dispute, however, is the floor area of the apartment in question. The defendant tenant claims that the apartment’s floor area aggregates 171.35 square feet; the landlord claims 140.75 square feet. The floor plans submitted as evidence on this motion lack sufficient detail to permit a determination, on papers alone, of whether or not the floor *864 area aggregates more than 160 feet, thereby satisfying the requirements of the statute. While this conflict would therefore appear to present a triable question of fact, upon which determination of the existence of a violation would depend, its resolution is immaterial here.
Preliminarily, this court must consider whether it can entertain this action at all. Defendant claims that this court lacks subject matter jurisdiction over the controversy at bar, asserting that the Department of Housing Preservation and Development (HPD), and not this court, is the appropriate agency to adjudicate violations of the Housing Maintenance Code.[2]
*865 Subject matter jurisdiction denotes a court’s competence, granted by Constitution or statute, to entertain a particular kind of litigation. (See, Thrasher v United States Liab. Ins. Co., 19 NY2d 159; Gager v White, 53 NY2d 475, 485, n 2.) The Supreme Court is a court of general, original and unlimited jurisdiction over all legal, equitable and statutory causes of action, except monetary claims against the State. (NY Const, art VI, § 7; Kagen v Kagen, 21 NY2d 532; see, Brooks v Board of Higher Educ., 113 Misc 2d 494.) It has exclusive jurisdiction over actions for declaratory judgment. (CPLR 3001.) Thus, this court is the only court legally competent to grant the combination of legal, equitable and statutory relief sought by plaintiff here.
Defendant’s jurisdictional objection is actually not one regarding subject matter jurisdiction, but one relating to the concept of "primary jurisdiction”. The term "primary jurisdiction” can be somewhat misleading. In this context, it refers to a concept whereby a court having subject matter jurisdiction of a controversy forbears from exercising it, under certain circumstances. In requiring the sound exercise of discretion, the concept presupposes the power to exercise jurisdiction. Thus, where an administrative agency has jurisdiction over an *866 issue requiring technical expertise or highly specialized legal knowledge for its resolution, and where resolution by the court would be unreasonably burdensome and time consuming, resort to the court should be withheld pending resolution by the administrative agency. The agency is then said to have "primary jurisdiction”. (See, Eli Haddad Corp. v Redmond Studio, 102 AD2d 730; Greenthal & Co. v 301 E. 21st St. Tenants’ Assn., 91 AD2d 934.) The case at bar does not require the complicated factual and arcane legal determination, for example, routinely required in rent computation cases. Rather, determination of the floor area can be simply done after additional data, gleaned by inspection, could be submitted by the parties; if necessary, expert testimony could be supplied at a hearing. Judicial economy clearly does not here require that the court defer to an administrative agency.
Similarly inapposite here is the conceptually related doctrine which requires the exhaustion of administrative remedies. The doctrine requires that parties first litigate issues before a competent administrative tribunal and fully exhaust all available administrative procedures and appeals before bringing an action in a court. (Young Men’s Christian Assn. v Rochester Pure Water Dist., 37 NY2d 371.) It presupposes the existence of an adjudication procedure before an administrative tribunal competent to grant the relief being sought before the court. There is no such quasi-judicial tribunal before which plaintiff here could seek the relief requested in the complaint. Moreover, it is not logical to require the owner to himself lodge a complaint with a city agency, since it might result in the imposition of civil or criminal liability on him. (See, Sandflow Realty Corp. v Diaz, 64 Misc 2d 625.)
At issue here is not simply whether the tenancy of defendant and her daughter violates the over-occupancy statute. Rather, the issue is whether or not the tenant has breached her lease.
The lease provides in pertinent part as follows:
"Tenant’s Duty to Obey Laws: Tenant’s Conduct: 7. (A) Compliance with Law; Tenant shall obey all present and future City, State and Federal laws, and orders and regulations of the New York Board of Fire Underwriters, which affect the Apartment and building, and shall comply at Tenant’s expense with all such notices given to Landlord or Tenant which arise from Tenant’s improper use of the Apartment or the building.
*867 "(B) Objectionable Conduct. Conduct which violates applicable law or statutes, orders or regulations, or the rules and regulations of the Lease or which renders or tends to render the Apartment or building unfit for human habitation, or which results in conditions which are dangerous, hazardous, or detrimental to the proper enjoyment of their Apartment by other tenants, constitutes objectionable conduct, which actions by Tenant shall give Landlord the right to terminate the lease in accordance with Article 19.”
Thus, the focus of the court’s inquiry must be whether the tenant can be held responsible for the claimed violation of the overcrowding statute.
Given the purpose and structure of the overcrowding statute the landlord must verify that any prospective occupancy is legal before entering into a lease. He must ascertain who is to occupy the apartment as well as the apartment’s floor area. It cannot be determined from the proof submitted whether the landlord actually conducted any investigation before entering into the renewal lease now in effect. Thus, no conclusion can be reached as to whether the landlord knowingly and intentionally waived objection to the alleged over occupancy. However, under the circumstances presented, and given the landlord’s responsibility, intentional waiver is immaterial.
The landlord must be estopped from asserting that the tenant caused the alleged violation. Not only did he have actual or constructive notice of the occupancy before having executed the renewal lease; his execution of the lease reasonably caused the tenant to rely on the landlord’s implicit representation that the occupancy was legal.
When the plaintiff landlord purchased the building, the defendant tenant had already been living in the apartment with her daughter for approximately 12 years. While the court cannot determine the extent of the prior owner’s knowledge, or to what extent it was communicated to plaintiff, plaintiff had both the opportunity and the duty to ascertain the number of occupants upon his taking possession, and, at the very latest, before renewing the lease. Thus, whether or not he actually knew of the daughter’s presence, upon taking possession or upon signing the lease, he must be deemed to have had constructive knowledge, because the exercise of reasonable diligence would have produced actual knowledge. (42 NY Jur, Notice & Notices, § 3; see, Freeman v 862 Park Ave. Corp., NYLJ, Dec. 21, 1983, p 6, col 2 [Sup Ct, NY *868 County, Evans, J.].) There is no evidence that plaintiff conducted, or attempted to conduct any investigation of the subject occupancy before signing the renewal lease. Moreover, there is no evidence that defendant fraudulently concealed her daughter’s presence, or altered the terms of the occupancy after signature of the lease. Finally, it is unreasonable to assume that a tenant would know that an otherwise legal occupancy would constitute a violation simply because her child has reached her fourth birthday.
The defendant tenant, having reasonably relied on the renewal lease, would suffer great detriment if the landlord were now permitted to assert a violation, particularly in light of the extraordinarily constricted housing market in New York City, especially for families with children. (See, Hutchins v Conciliation & Appeals Bd., 125 Misc 2d 809, 817-818.)
Since plaintiff is estopped from asserting that the defendant is responsible for a violation of law which, in turn, may have violated her lease, plaintiff cannot prove a necessary element for his claims seeking ejectment and injunctive and declaratory relief. Accordingly, defendant’s motion for summary judgment dismissing the complaint for failure to state a cause of action must be granted as to the first, second and third causes of action.
The fourth cause of action, seeking allegedly past due rent, is severed. Defendant, by affirmative defense, claims that she began to withhold rent in July 1984 because of the landlord’s failure to make repairs and maintain the building in a habitable and safe condition. This claim and affirmative defense each state a valid cause of action and amount to a triable factual dispute.
Summary judgment must also be granted dismissing the fifth cause of action, seeking additional use and occupation, since no basis has been demonstrated which would merit such relief.
Since neither party has sought relief respecting the counterclaims, they too are severed. The tenant’s claim for attorney’s fees pursuant to Real Property Law § 234 is denied as premature, without prejudice to renewal before the trial court.

. It cannot be determined from the papers submitted when, or from whom, plaintiff acquired the building.

. In support of this proposition, defendant relies on Widamo Estates v McCoy (NYLJ, Apr. 11, 1969, p 17, col 6 [Civ Ct, NY County]) and Munroe v 344 E: 76th Realty Corp. (113 Misc 2d 155). Neither case, however, holds that this court lacks subject matter jurisdiction over the type of action here at issue. Moreover, because each is distinguishable on its facts, neither is applicable to the case at bar.
Widamo (supra) was a holdover proceeding based on an alleged violation of the antiovercrowding statute, by a statutory tenant of a six-room rent-controlled apartment, based on the presence of her eight children. After a Bench trial, the court held for the tenant, finding that the landlord failed to prove either the area of the apartment or the nonexistence of the mandated 80 square feet per occupant ratio. The court noted the statutorily mandated enforcement scheme and the landlord’s concession that no violation had been posted by the city on the property; it then opined in what must be regarded as dictum that "[p]rivate persons may not bring on a proceeding such as this * * * in the absence of a finding of fact by an agency or department of the City of New York charged with the enforcement of the laws, ordinances and regulations in relation to multiple dwellings” (p 17, col 7). Clearly, this posttrial opinion cannot represent a holding of lack of subject matter jurisdiction; otherwise, the court would not have been legally able to try the case and render an enforceable judgment. (See, Thrasher v United States Liab. Ins. Co., 19 NY2d 159; see also, CCA 204, granting subject matter jurisdiction to the Civil Court over summary proceedings to recover real property.)
Rather, the Widamo dictum was based on the unarticulated premise that an administrative finding of overcrowding was a condition precedent to the maintenance of the holdover proceeding. Since a condition precedent must be pleaded and proven by the party seeking affirmative relief, it effectively becomes another element of his cause of action. (See, Lacks v Lacks, 41 NY2d 71.) Thus, because of the landlord’s failure of proof, the court was unable to grant the relief sought, even though it had the power to entertain the proceeding. (See, Thrasher v United States Liab. Ins. Co., supra.)
Because Widamo involved a rent-controlled apartment and its premise was implicitly based on the court’s view of the requirements of the rent-control system as it existed in 1969, it is inapplicable to the case at bar. Indeed, in the wake of Widamo, the rent control law was substantially amended the following year. (Local Laws, 1970, No. 30 of City of New York.) *865 Included among the changes was a clarifying amendment permitting a landlord to seek eviction based on illegal occupancy or violations having been placed on the building. Administrative Code of the City of New York § Y51-6.0 (a) (3): "[PJrovided, however, that such occupancy shall not be considered illegal by reason of violations placed against the housing accommodations or the building in which same are located by any department or agency of the city having jurisdiction unless such department or agency has issued an order requiring the tenants to vacate said accommodation or building or unless such occupancy for such building or such violations relied on by the landlord result from an act, omission or situation caused or created by the tenant”.
The amendment makes clear that a landlord cannot use a violation as a predicate for eviction unless either of two circumstances are proven: (1) an appropriate agency has already issued a vacate order or (2) the violation was created by the tenant. This amendment therefore rendered moot the premise of Widamo’s dictum. (See, Sandflow Realty Corp. v Diaz, 64 Misc 2d 625, owner permitted to maintain eviction proceeding where uncontradicted city inspection report found gross overcrowding and where uncontradicted evidence indicated that condition was caused exclusively by the tenants.) Nevertheless, Widamo was cited, despite the change in law, as part of an alternative holding in Munroe (supra), a case involving the rights of unrelated occupants under the then-applicable law. (See, Hudson View Props. v Weiss, 86 AD2d 803, revd 59 NY2d 733, legislatively abrogated by Real Property Law § 235-f, as added by L 1983, ch 402 § 39.) Munroe is therefore also inapplicable to the case at bar.