■ PARK HOLDING COMPANY, Respondent, v JAMES POWER, Appellant.—Order, Appellate Term, First Department, entered April 6, 1989, which modified two orders of the Civil Court, New York County (Phyllis Gangel-Jacob, J.), entered July 7, 1988, by granting the landlord's cross motion for summary judgment on its licensee petitions and awarding it judgment of possession and remanding the matter to the Civil Court for a determination of the use and occupancy due the landlord, unanimously reversed, on the law, without costs or disbursements, the cross motion denied and the matter remanded to the Civil Court for further proceedings.

This is a summary holdover proceeding against respondent James Power, who occupies the subject apartment, consisting of two units, allegedly as a licensee based on the expiration of said license. Jay Bernstein, the tenant of record, began to reside in apartment No. 2018 on or about December 1, 1964 pursuant to a written lease. He thereafter, on or about July 1, 1974, obtained a written lease for apartment No. 2017 and

commenced occupying both units, which were combined with the knowledge and consent of the petitioner landlord. Respondent Power began to live in the combined apartments as Bernstein's roommate. He has now occupied the units for more than 16 years and paid the rent to the landlord's managing agent, Glenwood Management Corp., from September 1974 through September 1978, without any objection to his residing in the apartments.

Subsequently, on or about November 17, 1987, Bernstein and the landlord entered into two separate surrender agreements by which the "Tenant and Landlord * * * agreed to the termination and cancellation of the above lease as of November 30, 1987" with Bernstein "acknowledg[ing] that Mr. James Power, the sole other occupant of the apartment, is a roommate who has no legal rights to remain in the apartment and that Mr. Power has never been a co-tenant or signatory on any lease for the apartment." Bernstein further acknowledged that "rent, if any, received by Landlord from Mr. Power was accepted without prejudice and solely to accommodate tenant." After Bernstein vacated the premises on November 30, 1987, the landlord served a "notice of termination of license and/or notice to quit" on Power, giving him until January 15, 1988 to vacate. When Power refused to vacate, the landlord commenced this proceeding. In his answer, Power asserted, as affirmative defenses, that the landlord, by accepting his rent payments, had waived its right to object to Power's occupancy; that, by virtue of his "loving—immediate family type relationship" with Bernstein, Power is the legal rent-stabilized tenant in the apartment and that the proceeding was brought as part of the landlord's efforts to discriminate against him based on his "sexual criteria". Power thereafter moved to dismiss the petition on the ground that the landlord's acceptance of rent from him for a four-year period constituted a waiver of any objection to his tenancy. The landlord cross-moved for a summary judgment award of possession and all outstanding use and occupancy due and owing premised upon Bernstein's surrender agreements. Civil Court, *inter alia,* denied Power's motion to dismiss as well as the cross motion, finding issues of fact including whether the landlord's acceptance of his rent payments over a four-year period constituted an acceptance of Power as a tenant and whether Power's relationship with Bernstein would afford the former with succession rights under the Rent Stabilization Code (9 NYCRR 2523.5 [b] [1]). On appeal, the Appellate Term modified the orders of the Civil Court by granting the landlord's cross motion for sum-

mary judgment and remanding the matter to the Civil Court for a determination of the use and occupancy due the landlord. Appellate Term granted Power's application for leave to appeal to this court. We reverse, deny the landlord's cross motion for summary judgment and remand the matter to the Civil Court for a determination of Power's rights, if any, with respect to the subject apartment.

Appellate Term erred in summarily rejecting Power's waiver claim since, in our view, an issue of fact is presented as to whether the landlord's acceptance of rent from him over a four-year period, without any effort to terminate the tenancy, constituted a waiver of the landlord's right to object to Power's continued occupancy of the apartment. "[W]aiver is the voluntary abandonment or relinquishment of a known right. It is essentially a matter of intent which must be proved". (*Jefpaul Garage Corp. v Presbyterian Hosp.*, 61 NY2d 442, 446.) A waiver occurs when there is "such conduct or failure to act as to evince an intent not to claim the purported advantage". (*Hadden v Consolidated Edison Co.*, 45 NY2d 466, 469.) In addition to paying the rent in his own name over a four-year period, Power claims to have made improvements in the apartment with the consent of the landlord and to have resided there, not "by stealth, deception or surreptitiousness" but in an "open, notorious and hostile" manner; indeed, his name appeared on the mailbox during the entire time he occupied the apartment. Thus, an issue of fact is presented as to whether the landlord's acceptance of rent from Power over a four-year period, without any effort to terminate the tenancy, waived the landlord's right to object to Power's continued occupancy.

Moreover, in light of the Court of Appeals recent decision in *Braschi v Stahl Assocs. Co.* (74 NY2d 201), holding that the protection against eviction which runs to family members should extend to two adult lifetime partners whose relationship is long term and characterized by an emotional and financial commitment and interdependence, a question of fact is presented as to whether Power, who has allegedly lived in the apartment as a primary resident since the inception of the tenancy, is entitled to a lease pursuant to section 2523.5 (b) (1) of the Rent Stabilization Code. The test for assessing such a right includes "the exclusivity and longevity of the relationship, the level of emotional and financial commitment, the manner in which the parties have conducted their everyday lives and held themselves out to society, and the reliance placed upon one another for daily family services". (*Supra,* at

212-213.) As Power alleges, he cooccupied the subject apartment with Bernstein in a "loving—immediate family type relationship" since at least 1974. In that connection, we note the existence of emergency amendments to the State's rent regulations significantly expanding tenant protections and broadening succession rights in rent-regulated apartments to nontraditional family relationships, such as those recognized in *Braschi*.* Concur—Sullivan, J. P., Ross, Rosenberger, Ellerin and Rubin, JJ.

---

* The Division of Housing and Community Renewal's emergency rule is the subject of a legal challenge in a pending declaratory judgment action, *Rent Stabilization Assn. of N. Y. City v Richard L. Higgins, Commissioner of the N. Y. State Div. of Hous. & Community Renewal.*