OPINION OF THE COURT
Michael D. Stallman, J.
This holdover proceeding raises disturbing legal and ethical questions: May a landlord probe the sexual practices of a tenant and her spouse to prove that their marriage was a "sham”, and the spouse’s occupancy an illegal sublet? May an attorney use an adverse party’s confidential medical records as evidence? When may an entire court file be sealed?
FACTS
Respondent George B. is the current occupant of the subject *224 rent-stabilized apartment. Respondent Martha A. first rented the apartment from petitioner’s predecessor in 1980. She last renewed the lease in 1989 for a two-year term. George and Martha claim that they lived there continuously during this period. They married in 1984. Approximately eight months after the 1989 lease renewal, they separated and Martha moved out. Petitioner claims that he was ignorant of the marriage until immediately before the 1989 lease renewal, when Martha requested petitioner to add her husband to the lease. Petitioner alleges that he orally requested proof of the marriage, but did not receive it. Petitioner renewed the lease, with Martha only.
On or about June 27, 1990, petitioner served a notice to cure alleging that Martha sublet her apartment to George and “John and Jane Doe” without his permission. Petitioner served a notice of termination on July 19, 1990, and commenced this proceeding on September 11, 1990, alleging an illegal sublet.
After protracted motion practice and disclosure proceedings, respondents now move for summary judgment. Petitioner moves, inter alia, for a money judgment and immediate eviction based on respondent’s nonpayment of previously ordered use and occupation.
SUMMARY JUDGMENT
Respondents’ uncontradicted affidavits and a certified marriage certificate establish that they were married on November 2, 1984. It is thus undisputed that when the notice to cure was served, George was the lawful husband of Martha, the named tenant, and was entitled to occupy the apartment during the lease term. (Lease ¶ 2; see, Tagert v 211 E. 70th St. Co., 63 NY2d 818, 821, citing Matter of Cale Dev. Co. v Conciliation & Appeals Bd., 61 NY2d 976.) Similarly, respondents’ evidence, that they lived continuously there until Martha vacated, has not been disputed by competent evidence.[2]
Petitioner claims that triable questions exist about the respondents’ relationship. Petitioner’s position, as revealed in the notice to cure, is that “the prime tenant claims to be the husband [sic] of [George] however no valid proof of such *225 marriage has been presented to landlord, and any such purported marriage was a sham designed only as an attempt to afford the illegal occupant [George] the protection of the rent stabilization laws.” Although he no longer disputes the fact of respondents’ marriage, petitioner urges the court to peer behind the marriage, into the parties’ sexual and economic relationship. Specifically, petitioner claims, based on unsupported rumor, that George is homosexual; and, as proof, offers medical records to show that George has AIDS. He also cites to respondents’ separate bank accounts and decision to refrain from having children as evidence that respondents’ relationship was not a "real marriage.”
Petitioner’s argument is disingenuous, based on a distortion of Braschi v Stahl Assocs. Co. (74 NY2d 201) and a misconstruction of rent regulation.
In the landmark Braschi decision (supra), the Court of Appeals recognized that a long-standing gay relationship, characterized by emotional and financial interdependence, evidenced a permanent familial relationship equivalent to the permanence presupposed by a traditional marriage. The Court therefore held that a surviving gay life partner of a deceased tenant should be deemed a surviving family member entitled to succession rights under the rent laws.
Petitioner cites Braschi’s evidentiary standard out of context while ignoring its purpose. Petitioner therefore claims that George — and, indeed, the married spouse of any named tenant — must prove "emotional and financial interdependence” in order to assert rights in the premises.
The Court of Appeals never held that an inquiry into the sexual or financial relationship of legally married persons is either required or appropriate in this context. In Braschi (supra), the Court sought to expand the rights of occupants bound to tenants in nontraditional, loving relationships, rights which were previously accorded only to legally married persons. An appropriately limited, reasonable inquiry into the nature of such a nontraditional relationship may be needed to determine if the relationship should be regarded as "familial,” only because its parties lack objectively verifiable, traditionally accepted bonds of blood or marriage. (See, Park Holding Co. v Power, 161 AD2d 143.) Braschi never imposed such a requirement on married persons or relatives, or limited their preexisting rights. Braschi did not give landlords license to pry into intimate details of a married couple’s relationship, or their medical histories.
*226 Petitioner’s argument is contrary to public policy. An individual’s right to privacy in an intimate relationship is fundamental to human freedom and personal integrity; it is now firmly rooted in our law. (See, US Const 9th Amend; Griswold v Conn, 381 US 479; see also, People v Onofre, 51 NY2d 476, 486-489.) Private, consensual, adult sexual conduct is none of a court’s business, unless it impinges on a strong, countervailing, public policy (e.g., commercialized sexual activity) or another relationship (e.g., adultery). A strong showing is therefore required when a total stranger to the relationship attempts to overcome the presumption of confidentiality.
The privacy interest may be overcome by waiver or estoppel. For example, where an occupant asserts rights in premises arising from a nontraditional familial relationship, the occupant places that relationship in issue, making relevant a reasonable, limited inquiry. Even then, the intrusiveness of the inquiry must be restricted to that which is necessary to determine the nature of the relationship. Here, where a marriage certificate conclusively establishes the existence of a protected relationship as a matter of law, no factual question exists. The intimate details of the couple’s married life, including their sexual practices together or with others, their reasons for marrying or remaining childless, their health and finances, have not been placed in issue.[3]
Both the lease and the Rent Stabilization Code (RSC; 9 NYCRR parts 2520-2530) permit occupancy and renewal by an immediate family member, which, as a matter of law, includes a spouse. (RSC § 2520.6 [n], [o]; § 2523.5 [b] [1].) Contrary to petitioner’s unsupported assertion, the rent laws were not intended to protect only families with children. Once the marriage is established, the inquiry ends. (See, Mullens v Reynoso, NYLJ, Jan. 13, 1988, at 7, col 2 [Sup Ct, NY County] [landlord may not inquire into motivation behind a marriage].)
There are no material factual questions requiring trial. *227 Petitioner has not met his burden of coming forward with evidence showing that Martha entered into an illegal subletting arrangement with George or anyone else. The uncontradicted, competent evidence proves as a matter of law that George was Martha’s husband, not her subtenant.
Many New Yorkers live together in nonmarital living relationships, whether heterosexual. or homosexual, and regard each other as spouses. Others share space in nonsexual congregate arrangements. (See, e.g., Real Property Law § 235-f [the "roommate law”]; RSC § 2520.6 /1].) Accordingly, Martha’s request to add her husband to the lease as a tenant and her alleged failure to give petitioner proof of the marriage constitute neither breach of the lease nor proof of a sublet.[4] Indeed, Martha’s conduct is logically inconsistent with a sublet; a tenant violating the law would not wish to tip off the landlord, or grant equal cotenancy rights to a paying subtenant, or a nonpaying temporary licensee. Finally, given the uncontradicted proof that George had been living in the apartment for 10 years, and had been married to Martha for five years when this proceeding was commenced, petitioner’s unsupported assertion, that Martha married simply to transfer the apartment, strains credulity.
It is self-evident that the predicate for this proceeding — the alleged illegal sublet — never existed. This is not a case of technically defective notices or pleadings. Rather, the entire theory of the case is without merit in fact or law. Respondents’ motion for summary judgment dismissing the petition is granted.
ABUSE OF SUBPOENA AND MISUSE OF MEDICAL RECORDS
Petitioner’s attorney has appended, as exhibits, George’s hospital records, highlighting with day-glow marker details of George’s personal and medical history, including, that he is a gay person with AIDS. Petitioner acted improperly twice: first by covertly obtaining confidential, privileged personal records by subpoena; and, second, by disclosing them.
*228 Public Health Law § 2780 et seq. set forth a comprehensive scheme to assure the confidentiality of medical records of AIDS and HIV infection. It narrowly defines the exceptions under which such records may be disclosed; none are relevant here. The legislation was intended to promote voluntary testing and treatment by encouraging frank communication by patients with health care providers. (L 1988, ch 584, § 1 [legislative intent].) Like the physician-patient privilege, it correctly assumes that proper medical care is dependent on complete and accurate medical history. The Legislature also sought to protect affected individuals from loss of privacy, embarrassment and discrimination. (Id.) Nevertheless, petitioner’s counsel served a trial subpoena[5] on George’s hospital, returnable in the calendar part when a prior motion for use and occupation was first noticed. Aside from the privileged nature of the materials, the subpoena was improper: the return date was not the date set for trial; the subpoenaed materials lacked relevance to the motion.
A subpoena is process of the court. New York law permits an attorney to issue such process only because the attorney is a sworn officer of the court, and because a proper subpoena may be necessary to promote the court’s truth-finding process at trial. (See, CPLR 2302.) Petitioner used the subpoena not to produce documents necessary as evidence at trial, but as a substitute for pretrial disclosure. Disclosure in a special proceeding must be sought by motion. (CPLR 408.) Any document disclosure against a nonparty even in a plenary action must be sought on notice to all parties. (CPLR 3120.) This requirement is not just a bothersome formality. It permits the court to screen for relevance and assess any assertion of privilege.
Significantly, in the prior motion practice for disclosure, petitioner did not seek these records, presumably because they were not legally discoverable. Rather, petitioner surreptitiously served the subpoena on the hospital without either leave of court or notice to George, thereby denying him the opportunity to timely assert privilege.
*229 Petitioner’s use of these medical records on this motion demonstrates that they were not properly subpoenaed for legitimate use at trial, where their introduction could be opposed by objection. Irrelevant to the issues properly before the court, their method of presentation supports the inference that they were included to embarrass respondents and prejudice their rights.[6] The abuse of a subpoena as a subterfuge to breach a privilege and embarrass a party is sanctionable and should result in suppression of the wrongfully obtained material. (See, Matter of Beiny, 129 AD2d 126.)
USE AND OCCUPATION
Petitioner moves for an order directing the payment of use and occupation for September 1, 1990 through March 31, 1992, totalling $12,709.10, and a money judgment and warrant of eviction based on disobedience of a prior court order (Allesandro, J., Apr. 3, 1992) which had directed the payment of use and occupation from April 1, 1992 through trial.[7] It is undisputed that only the April 1992 payment was made.
Petitioner is clearly entitled to judgment for the money which Judge Allesandro ordered paid. Respondents have shown no legal basis for their failure to comply with Judge Allesandro’s order. It is law of the case and binding on this court. Petitioner is entitled to $4,682.30, comprising seven monthly payments of $668.90.
For the same reason, petitioner is not entitled to the use and occupation sought for the prior period. Despite his specific representation that no prior application had been made for the relief sought, petitioner’s counsel unsuccessfully sought such relief before Judge Allesandro, who denied it sub silentio in his order of April 3, 1992. Petitioner neither appealed, nor sought modification of Judge Allesandro’s order. It is law of the case for all purposes; it binds petitioner and respondent alike.
*230 Petitioner’s application for an immediate warrant of eviction is denied. Not only has petitioner not shown entitlement as a matter of law to a possessory judgment, the other circumstances of this case indicate that such drastic relief is inappropriate. Petitioner is entitled only to a money judgment not enforceable by eviction, limited to the $4,682.30 owed pursuant to Judge Allesandro’s order. Respondents’ attorney’s fees have not yet been computed. (See, infra.) Accordingly, a partial judgment should not be entered now. The hearing court shall enter one money judgment after determination of the attorney’s fees.
SANCTIONS
A court may impose sanctions for frivolous conduct, defined, inter alia, as
"completely without merit in law or fact and [which] cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; or
"[which] is undertaken primarily to * * * harass or maliciously injure another.” (22 NYCRR 130-1.1 [c] [1], [2].)
Much of petitioner’s counsel’s conduct appears to be sanctionable. As indicated, he has abused the court’s subpoena power, improperly obtained privileged medical records having no relevance to this case and disclosed them in such a manner as if calculated to embarrass a party and appeal to homophobic bigotry. He has misstated the Braschi holding and otherwise misrepresented controlling law. He has improperly re-sought relief previously denied, while misrepresenting that no prior application for that relief had been made.
Moreover, petitioner’s counsel commenced and continued this proceeding without a proper basis. Petitioner admits that Martha told him that respondents were married, yet one month later, without further independent investigation or an attempt to seek precommencement disclosure (see, CPLR 3102 [c]), petitioner served the notice to cure asserting an illegal sublet. Certainly, by November 1991 when respondent served the prior, unsubmitted, motion for summary judgment annexing the marriage certificate, petitioner had actual knowledge of the marriage. Instead of honorably discontinuing, petitioner has instead attacked the respondents’ marriage without any legal basis.
Accordingly, the court concludes that probable cause exists for considering the imposition of a monetary sanction. The *231 sanctions rule clearly contemplates that both attorney’s fees and punitive sanctions may be assessed. Moreover, respondents’ separate entitlement to attorney’s fees under Real Property Law § 234, while not entitling respondent to a double recovery for legal fees, is a distinct remedy not dependent on this court’s findings on the sanction issue. Petitioner’s counsel is directed to contact the court in chambers within 15 days of this decision, to arrange an appearance date if he wishes to be heard before final consideration. (See, 22 NYCRR 130-1.1 [d].)[8]
SEALING OF COURT RECORDS
The routine, indiscriminate sealing of civil court records is disfavored in New York. (Uniform Rules for Trial Cts [22 NYCRR] § 216.1.) In most cases, the public’s right to know both the process and outcome of litigation outweighs the parties’ desire to keep their business secret. Even in the absence of a specific statutory secrecy provision (e.g., Domestic Relations Law §§ 235 [matrimonial actions], 114 [adoption proceedings]; Family Ct Act §§ 375.1, 531, 741, 1043 [proceedings involving children]), courts retain the inherent power to seal their records when the public interest requires, provided that good cause is shown and an adequate record is made to permit review. (See, Dawson v White & Case, 184 AD2d 246 [trial court’s sealing of records upheld; no contrary public interest demonstrated]; Feffer v Goodkind, Wechsler, Labaton & Rudolf, 152 Misc 2d 812, affd 183 AD2d 678 [despite presumption of "openness,” records are sealed because no substantial public interest involved]; cf, Pugach v Capital Cities, 151 Misc 2d 894 [no good cause for sealing].)
Here, fundamental privacy interests and the statutory confidentiality respecting HIV records far outweigh any general predisposition against sealing. In light of the unique nature of this case, it would be futile to remove and seal only the medical records, and impracticable to redact all the other impermissible references. The entire court file is permeated with confidential and embarrassing information. To permit any part of this file to remain open to public inspection would disclose respondents’ identities and subvert the purpose of the confidentiality statute. Accordingly, the court file is hereby *232 ordered sealed, subject to further order of this court, the Supreme Court, or any appellate court.
attorney’s fees
The lease provides that the landlord may recover attorney’s fees incurred in bringing a summary proceeding, (jfjf 19, 22.) Real Property Law § 234 makes that provision reciprocal, entitling a tenant to reimbursement of attorney’s fees when the tenant prevails. Accordingly, respondent’s motion for attorney’s fees is granted to the extent of directing a hearing on attorney fees.
This proceeding is restored to the Part 18 Trial Calendar for December 21, 1992, at 9:30 a.m., for referral to a Housing Court Part for hearing and determination of attorney’s fees and thereupon, for the entry of a money judgment. The petition is otherwise ordered dismissed.

. Respondents’ copious documentation includes a 1981 American Kennel Club dog registration certificate listing respondents as owners at the subject address. Despite innuendo, there is no evidence that anyone else has occupied the apartment with George or Martha.

. To the extent that George’s examination before trial, ordered by another Judge on respondents’ default, dealt with intimate matters, such questions were inappropriate. However, in the absence of opposition or an application to limit the scope of questioning, questions were posed and answers elicited. Given the importance of the interest at stake, the right to privacy should not be deemed waived, nor should deposition testimony on these issues be considered. Respondents did not first raise or rely on these confidential issues, which might have effected a waiver or estoppel. (Cf., People v Durham, 146 Misc 2d 913 [defendant placed his own medical condition in issue by allegedly telling complainant that he had AIDS]; see generally, Koump v Smith, 25 NY2d 287.)

. A failure to provide proof of marriage may well explain why the lease was renewed in Martha’s name only. Martha’s, or George’s, rights to have George added to the lease in 1989 are not at issue here. Given this assertion, petitioner was aware of George’s occupancy before execution of the 1989 lease renewal. Petitioner’s failure to investigate George’s status prior to renewal might be evidence of a waiver or estoppel (see, Park Holding Co. v Power, 161 AD2d 143; Kalimian v Olson, 130 Misc 2d 861); this was not raised by respondents, and need not be considered here.

. The subpoena was a standard Blumberg form trial subpoena duces tecum. The closing paragraph, "witness * * * one of the judges of said court” was whited out and replaced by "witness * * * [petitioner’s attorney’s name], one of the attorneys of said court,” deceptively conveying that he was a court employee or official, in addition to the "attorney for petitioner,” as noted at the subpoena’s foot. Notations on the subpoena indicate that 134 pages were transmitted to petitioner’s counsel, not all of which were annexed to the motion papers.

. Petitioner’s attorney’s acts may also constitute "procuring disclosure” of confidential medical records. (See, Public Health Law § 2783 [1] [b].) This proceeding does not concern statutory liability by the attorney or anyone else. Neither the hospital nor the unnamed individuals implicated in the disclosure are before this court. This problem could be averted by an amendment to CPLR 2302 and 2306 requiring that subpoenae for medical records be issued only upon motion and court order, supported by an affidavit of need and proof of notification to the patient.

. This motion could not be referred to Judge Allesandro, because he is no longer sitting in New York County.

. A copy of this decision is being forwarded to the Disciplinary Committee of the Appellate Division, First Department. (See, DR 6-101 [A] [2] [22 NYCRR 1200.30 (a) (2)]; DR 7-102 [A] [1], [2], [5] [22 NYCRR 1200.33 (a) (1), (2), (5)]; DR 7-106 [B] [1]; [C] [1] [22 NYCRR 1200.37 (b) (1): (c) (1)].)