# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP002536-FT |
| COMPLETE TITLE: | Democratic Party of Wisconsin and Cory Liebmann, Petitioners-Respondents, v. Wisconsin Department of Justice and Kevin Potter, Respondents-Appellants-Petitioners. |

REVIEW OF A DECISION OF THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | December 28, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 6, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Richard G. Niess |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | Abrahamson, J., joined by A.W. Bradley, J. |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondents-appellants-petitioners the cause was argued by *Misha Tseytlin*, solicitor general with whom on the briefs was *Luke N. Berg*, deputy solicitor general, and *Brad D. Schimel,* Attorney General.

For the petitioners-respondents, there was a brief by *Michael R. Bauer* and *Bauer Law LLC.,* Madison, and oral argument by *Michael R. Bauer.*

2016 WI 100

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP2536-FT

(L.C. No. 2014CV2937)

STATE OF WISCONSIN                    :        IN SUPREME COURT

Democratic Party of Wisconsin and Cory Liebmann,

      Petitioners-Respondents,

      v.

Wisconsin Department of Justice and Kevin Potter,

      Respondents-Appellants-Petitioners.

**FILED**

**DEC 28, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1   REBECCA GRASSL BRADLEY, J.   This is a review of an unpublished court of appeals' opinion and order,[1] which affirmed the circuit court's order[2] granting a writ of mandamus compelling the Wisconsin Department of Justice to disclose two video recordings requested by the Democratic Party of Wisconsin under Wisconsin's Public Records Law, Wis. Stat. §§ 19.31-.39 (2013-

---

[1] Democratic Party of Wis. v. DOJ, No. 2014AP2536-FT, unpublished slip op. (Wis. Ct. App. Oct. 14, 2015).

[2] The Honorable Richard G. Niess of Dane County presided.

14).[3]   We are asked to decide whether the justification for nondisclosure outweighs Wisconsin's commitment to public access to government records.   We conclude that the reasons given by the record custodian for nondisclosure sufficiently demonstrate that the legislative presumption in favor of disclosure has been outweighed by the public harm that would result from disclosure. We reverse the decision of the court of appeals and deny the writ of mandamus.

## I.   BACKGROUND

¶2   In September 2014, Cory Liebmann, Research Director for the Democratic Party of Wisconsin, submitted a public records request to the Wisconsin Department of Justice.   The request asked for the release of

> [a]ny and all photographs, films, and tape recordings including but not limited to computer tapes and printouts, CDs, DVDs, videotapes and optical discs of any presentation made at any training program by Brad Schimel on the following dates:  May 14, 2013; June 8, 2012; November 8, 2012, May 20, 2010; June 17, 2009.

¶3   Kevin Potter, the Department of Justice's Record Custodian, responded to the request by letter in October 2014. Potter explained the DOJ had "identified two records responsive to [Liebmann's] request:  one video recording of a presentation made by Mr. Schimel on May 14, 2013 on the topic of victim confidentiality and one video recording of a presentation on June 17, 2009 concerning the prosecution of, and common defenses

---

[3] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

in online child exploitation cases." Both videos were recordings of presentations Attorney Schimel[4] gave at Wisconsin State Prosecutors Education and Training conferences. The subject matter of the 2013 conference was "Protecting Victims of Crime" and Attorney Schimel's segment addressed "Victim Confidentiality." Attorney Schimel's presentation at the 2009 conference addressed "Prosecution [and] Common Defenses in Online Child Exploitation Cases." These conferences were training sessions for prosecutors and victims' rights advocates, with some law enforcement representatives present. Attendance was limited to those groups and not open to the public or the media. The videos were not publicly available but were recorded and stored so that prosecutors who were not able to attend could view the educational training at a later date.[5]

¶4 Potter explained that neither recording would be released because, after applying the public records balancing test, he concluded the public interest in nondisclosure outweighed the general presumption favoring release. Potter

---

[4] During the pendency of this case, Attorney Schimel served as the Waukesha County District Attorney and later as Wisconsin Attorney General. To avoid confusion, we refer to him throughout as "Attorney Schimel." At the time of both presentations at issue, Attorney Schimel served as the Waukesha District Attorney. At the time of the 2013 presentation, he was also the Republican candidate for Wisconsin Attorney General in a contested election, which he won in November 2014.

[5] The presentations are not professionally recorded and the videos are of low quality. As we understand it, a video camera was set up and an attendee was asked to push "record" when the presentation started and to push "stop" when it ended.

gave specific reasons for his conclusion particular to each recording, with some overlap.  The 2009 recording would not be released because (1) the presentation contained specific litigation strategies for online child exploitation cases, disclosure of which would impede effective investigation and prosecution of sexual predators; (2) the prosecutor training programs are similar to the contents of a prosecutor's case files, which are exempt from disclosure under State ex rel. Richards v. Foust, 165 Wis. 2d 429, 477 N.W.2d 608 (1991); (3) the material presented may be privileged attorney-client communication, work product material, or both; and (4) disclosure would adversely impact victims' rights.  The reasons for not disclosing the 2013 recording included:  (1) the presentation, which was part of a joint training program for prosecutors and crime victim staff, discussed prosecution strategies in a high-profile sexual extortion case involving high school students; and (2) the presentation contained a substantial amount of detail, which, if disclosed, would violate the Wisconsin Constitution's Article I, § 9m provision requiring that crime victims be treated with "fairness, dignity and respect for their privacy."  The recording also contained "sufficient details" that "could lead to identification and invasion of privacy for young victims of a very sensitive series of crimes."  In addressing release of a redacted version, Potter explained that doing so would render an "end result meaningless to the viewer."

4

¶5 Liebmann and the Democratic Party petitioned the circuit court for a writ of mandamus seeking release of the records, punitive damages, and costs and attorney's fees. The petition asserted the withheld recordings may contain evidence of misconduct by Attorney Schimel: "Upon information and belief, several or all of these tapes may include offensive racial remarks and ethnic slurs, including but not limited to stereotyped accents, as well as sexist remarks, made by Mr. Schimel."

¶6 After viewing both recordings in camera, the circuit court concluded neither video showed misconduct by Attorney Schimel, but ordered both recordings disclosed. The circuit court felt the 2009 video presented a close question because it contained strategies and techniques used in investigating and prosecuting sexual predators. Nevertheless, the circuit court reasoned this video should be disclosed because the techniques discussed were "widely known" via "books, magazine articles, [and] TV shows." It did not think the video contained "any real secrets" and compared prosecuting sexual predators to playing hopscotch: when the predators find ways to get around the State's techniques, the State has to catch up and find another way. The circuit court was "certain" the strategies discussed "are taught in law enforcement academies, FBI training academies, et cetera." The circuit court decided that parents needed to see the 2009 video so they could better protect their children from sexual predators. The circuit court specifically

acknowledged that the 2009 video did not involve "misconduct on the part of any of the presenters."

¶7 With respect to the 2013 video, the circuit court reasoned disclosure was required because (1) the video did not contain specifically identifiable names of victims; (2) the victims' responses to the sex extortion, described by Attorney Schimel in the video, were "perfectly natural responses to the horrific crimes that these children were subject to," and no one should be surprised by the "traumatic effects" these children suffered; (3) this information is important for members of the public to know so they can protect their children; and (4) many of the details discussed in the video were in the original case file and had previously been "splattered all over the Internet." The circuit court did recognize that re-disclosing this information now may "distress" and re-traumatize the victims, but the court did not believe such factors outweighed the public's right to "know the contents of these tapes."

¶8 In a summary disposition opinion and order, the court of appeals affirmed the circuit court's decision. Release of the two recordings at issue has been stayed during the appeal process. In addition, the DOJ allowed the attorney representing the Democratic Party to view both the 2009 and 2013 videos, subject to a protective order. After viewing the videos twice, counsel abandoned any claim that the videos contain any misconduct by Attorney Schimel. We accepted the DOJ's petition for review in January 2016.

6

## II.   DISCUSSION

### A.   Standard of Review

¶9   Our review here is de novo.  See Woznicki v. Erickson, 202 Wis. 2d 178, 192, 549 N.W.2d 699 (1996).  "Whether harm to the public interest from [disclosure] outweighs the public interest in [disclosure] is a question of law."  See Newspapers, Inc. v. Breier, 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979).  The legislature has created a presumption of accessibility to public records.  See Nichols v. Bennett, 199 Wis. 2d 268, 273, 544 N.W.2d 428 (1996).  If a custodian denies a public records request, he or she must give specific reasons for denying access, and it is the role of the court to determine whether the reasons are sufficient.  See Breier, 89 Wis. 2d at 427.  Although we may benefit from the circuit court's and court of appeals' analyses, our determination is made independently.  See Hempel v. City of Baraboo, 2005 WI 120, ¶21, 284 Wis. 2d 162, 699 N.W.2d 551.  The party seeking nondisclosure has the burden to "show that 'public interests favoring secrecy outweigh those favoring disclosure.'"  John K. MacIver Inst. for Pub. Policy, Inc. v. Erpenbach, 2014 WI App 49, ¶14, 354 Wis. 2d 61, 848 N.W.2d 862 (quoted source omitted).

### B.   Applicable Law

¶10 Wisconsin is firmly committed to open and transparent government, as evidenced by the policy expressed by the legislature in our Public Records Law:

> [I]t is declared to be the public policy of this state
> that all persons are entitled to the greatest possible

information regarding the affairs of government and the official acts of those officers and employees who represent them . . . . To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

Wis. Stat. § 19.31. Wisconsin law does recognize three types of exceptions to this general policy of open access: (1) statutory exceptions; (2) common law exceptions; and (3) public policy exceptions. See Hempel, 284 Wis. 2d 162, ¶28. When a public records request is made, the record custodian must determine whether the Public Records Law applies. If the law applies, the presumption favors disclosure of the record. Id. The next step is to determine whether any exceptions operate to overcome the general presumption of openness. Id. "[T]he legislature entrusted the records custodian with substantial discretion" in making this determination. Id., ¶62.

¶11 Exceptions to the public records law's general presumption of disclosure exist because some requests conflict with other important policy considerations. Id., ¶28. The custodian must conduct "the open records disclosure analysis on a case-by-case basis." Id., ¶62. If a statutory or common law exception applies, the analysis ends and the records will not be disclosed. Id. If neither applies, the custodian proceeds to the public policy balancing test, which requires a consideration of all relevant factors to determine whether the public interest in nondisclosure outweighs the public interest in favor of

8

disclosure.  Id., ¶63.  The test considers whether disclosure would cause public harm to the degree that the presumption of openness is overcome.

¶12 This case does not involve any of the statutory exceptions set forth in Wis. Stat. §§ 19.31-.39.  The DOJ asserts one common law exception:  prosecutorial files are exempt as recognized in Foust.  This court in Foust held that "prosecutorial files are exempt from public access" as a common law exception even after the case is closed.  Id. at 430, 433-34.  In doing so, we explained that investigations and data collected are not open for public viewing because disclosure of this information would be "harmful to the orderly administration of justice."  Id. at 435-36.  We listed multiple reasons for our conclusion, including the discretion afforded to prosecutors and the fact that their files "may contain historical data leading up to the prosecution which may be in the form of anonymous statements, informants' statements, or neighborhood investigations at the scene of the crime."  Id. at 434-35.  We noted that this material needs to be protected in order to ensure that the public will continue to cooperate in criminal investigations.  Id. at 435.

¶13 Linzmeyer v. Forcey, 2002 WI 84, 254 Wis. 2d 306, 646 N.W.2d 811, is another pertinent public records case.  In Linzmeyer, we held that a police report requested by a newspaper and the alleged victims could be disclosed over the objection of the teacher who was the subject of the police investigation.  Id., ¶¶2-3.  Emphasizing the strong public interest in

9

investigating and prosecuting criminal activity, we recognized that nondisclosure is appropriate when necessary to protect the public interest in "the reputation and privacy of citizens." Id., ¶31. Our concern was not for the individual teacher's embarrassment but for "the public effects of the failure to honor the individual's privacy interests." Id. We also quoted the exemptions set forth in the Freedom of Information Act, 5 U.S.C. § 552(b)(7) (2000), and said that "when coupled with our prior caselaw," FOIA "factors provide a framework that records custodians can use to determine whether the presumption of openness in law enforcement records is overcome by another public policy." Linzmeyer, 254 Wis. 2d 306, ¶33. As pertinent here, the Freedom of Information Act exempts records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." Id., ¶32 (quoting 5 U.S.C. § 552(b)(7)(E)).[6] The threat that releasing a record would reveal techniques and procedures used in "a sting or undercover operation that would

---

[6] The Freedom of Information Act applies to federal records and therefore is not controlling in Wisconsin Public Records cases, but as Linzmeyer and other Wisconsin cases have recognized, FOIA and the cases interpreting it can be used as persuasive authority in deciding Wisconsin Public Records cases. See Linzmeyer v. Forcey, 2002 WI 84, ¶33, 254 Wis. 2d 306, 646 N.W.2d 811; State ex rel. Hill v. Zimmerman, 196 Wis. 2d 419, 428 n.6, 538 N.W.2d 608 (Ct. App. 1995).

require secrecy" weighs against disclosure in the balancing test. <u>Linzmeyer</u>, 254 Wis. 2d 306, ¶41.

¶14 This case also involves a very important public policy consideration——of constitutional dimension——with respect to the treatment of crime victims in Wisconsin. The Wisconsin Constitution specifically provides: "This state shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy." Wis. Const. art. I, § 9m. This policy is further embodied in Wis. Stat. § 950.04(1v)(ag)[7] governing rights of crime victims and Wis. Stat. § 950.055(1)[8] governing rights of juvenile crime victims. This court recognizes "that justice requires that all who are engaged in

---

[7] Wisconsin Stat. § 950.04(1v) provides, in part:

RIGHTS OF VICTIMS. Victims of crimes have the following rights:

(ag) To be treated with fairness, dignity, and respect for his or her privacy by public officials, employees, or agencies. This paragraph does not impair the right or duty of a public official or employee to conduct his or her official duties reasonably and in good faith.

[8] Wisconsin Stat. § 950.055(1) provides:

LEGISLATIVE INTENT. The legislature finds that it is necessary to provide child victims and witnesses with additional consideration and different treatment than that usually afforded to adults. The legislature intends, in this section, to provide these children with additional rights and protections during their involvement with the criminal justice or juvenile justice system. The legislature urges the news media to use restraint in revealing the identity of child victims or witnesses, especially in sensitive cases.

the prosecution of crimes make every effort to minimize further suffering by crime victims." Schilling v. Crime Victims Rights Bd., 2005 WI 17, ¶26, 278 Wis. 2d 216, 692 N.W.2d 623.   The public policy interest in protecting the privacy of victims of crime——especially children affected by very sensitive crimes—— weighs heavily in favor of nondisclosure.

¶15 Having set forth the relevant framework, we now turn to an analysis of the 2009 and 2013 recordings.

### C.  Analysis

#### 1.  2009 Recording

¶16 At the 2009 training, Attorney Schimel discussed: what undercover officers can and cannot say when attempting to catch sexual predators, specific strategies to ensure adequate evidence exists for trial, how to extract evidence from computers, and how to overcome common defenses in sexual exploitation cases.   Attorney Schimel shared the specific strategies and techniques he used, and he provided numerous case-specific examples, even on occasion referring to the cases by name.   There is no doubt that this recording contains specific techniques and procedures for law enforcement investigations and prosecutions in Wisconsin.   The question is whether, because of this, application of the balancing test makes the 2009 video an exceptional case justifying nondisclosure.   Stated otherwise, would releasing this video be harmful to the public interest so as to overcome the general presumption in favor of disclosure?

12

¶17 The law does not provide an exhaustive list of specific factors used when applying the balancing test. An exhaustive list would be difficult if not impossible to create given the factually specific nature of public records cases. We review whether the custodian considered "all the relevant factors." Hempel, 284 Wis. 2d 162, ¶63.

¶18 Attorney Schimel is an elected official, and this factor weighs in favor of disclosure. See Linzmeyer, 254 Wis. 2d 306, ¶29. The content of the 2009 video, however, and its potentially harmful impact on the public interest weighs strongly in favor of nondisclosure. In the video, Attorney Schimel discusses tactics and strategies used by law enforcement and prosecutors to catch and convict criminals who prey on minors. The techniques discussed involve undercover and sting operations to catch criminals who use computers to victimize children. The presentation occurred at a confidential training session for prosecutors and victims' right advocates, with some police representatives present.[9] Public records containing prosecution strategies and police tactics are not specifically excepted from disclosure by Wisconsin statutes, but record

---

[9] The Democratic Party argues the training seminars were open to the defense bar, pointing to two names of attorneys on the attendee list currently doing criminal defense work. This argument fails to recognize the reality of the underlying facts. At the time of the presentations, those attorneys attended the seminar in their capacity as prosecutors. The fact that they left their jobs as prosecutors and now represent criminal defendants does not change the nature of the training seminars.

custodians can properly consider such content when determining "whether the presumption of openness . . . is overcome by another public policy," see Linzmeyer, 254 Wis. 2d 306, ¶¶32-33, and as noted, the federal Freedom of Information Act lists this type of record as exempt "if such disclosure could reasonably be expected to risk circumvention of the law" and protects it statutorily from disclosure, see 5 U.S.C. § 552(b)(7)(E).

¶19 The reason for protecting prosecutorial techniques and local police strategies is obvious: if local criminals learn the specific techniques and procedures used by police and prosecutors, the disclosed information could be used to circumvent the law. The content of the 2009 video falls squarely into this category. Releasing this video would create a significant risk that specific techniques and strategies being used in Wisconsin could instantly be disseminated over the internet and exploited by sexual predators. This information would in essence serve as a textbook enlightening Wisconsin criminals on how to avoid detection, elude capture, and escape conviction. The harm arising from release would substantially impair the ongoing battle police and prosecutors face in protecting children and would impede efforts made to catch and prosecute sexual predators who lurk in the shadows and anonymity of internet websites. Although disclosing this information directly to the Democratic Party alone would not necessarily be harmful, releasing the 2009 video to one effectively renders it public to all, including anyone plotting to use it to circumvent the law. See Foust, 165 Wis. 2d at 435 (declining to release a

14

prosecutor's file to a defendant wanting to see his own file because doing so would open the file to anyone who requested the file). Releasing the 2009 video would frustrate the public policy of investigating and prosecuting criminal activity that in this instance would cause considerable public harm, which overwhelmingly outweighs any public interest in viewing it. See Linzmeyer, 254 Wis. 2d 306, ¶39.

¶20 Drawing on reasons the circuit court used in ordering disclosure, the Democratic Party asserts: (1) the video would be helpful to parents trying to protect their children from predators, and (2) the techniques discussed on the video are not novel, do not contain any secrets, and are widely known, often seen on television shows. The Democratic Party's arguments, like the circuit court's reasons, are flawed and erroneous. This video is replete with police and prosecutor tactics, specific instances of cases with descriptive details, and practical strategies to gather evidence. This content would not assist the average parent.

¶21 The Democratic Party's assertion that the techniques and strategies are so widely known that disclosure would not be harmful is equally questionable. There is no rule of law protecting only brand new or novel prosecution techniques and police strategies, and there is no evidence that releasing local strategies will not lead to circumvention of the law simply because they are also seen on television crime shows. The Democratic Party does not cite any authority to support its "novel" argument, and when directly asked for authority for this

proposition during oral argument, the Democratic Party's attorney was unable to provide any. Although child predators may know in general terms various techniques taught to and employed by police departments across the country, the specific techniques used by police officers in a particular jurisdiction or geographic area are not necessarily a matter of common public knowledge. A criminal who knows the specific techniques being used locally is much more likely to evade capture than a criminal who, after viewing a crime show, guesses at what techniques local police and prosecutors are using.

¶22 Another factor to balance in these cases is the presence of "official cover-up" by public officials. Hempel, 284 Wis. 2d 162, ¶68. "The public has a very strong interest in being informed about public officials who have been derelict in their duty." Id. Everyone in this case, including the Democratic Party, agrees that the video does not contain any evidence of misconduct. Because the video reveals no misconduct or dereliction of duty, this factor does not counter the strong public policies supporting nondisclosure.

¶23 Additionally, the context of the records' request, although not always relevant, should be considered here. See id., ¶66 ("When performing a balancing test, however, a records custodian almost inevitably must evaluate context to some degree."). The Public Records Law does not require a requestor to disclose his or her identity or to state a purpose for the request. See Wis. Stat. § 19.35(1)(i). But by asserting that, "[u]pon information and belief, several or all of these tapes

16

may include offensive racial remarks and ethnic slurs, including but not limited to stereotyped accents, as well as sexist remarks, made by Mr. Schimel," the language of the Democratic Party's petition for a writ of mandamus suggests a partisan purpose underlying the request. During a contested election, the request sought records containing allegedly offensive comments made by the candidate from the opposing political party. And the Democratic Party persists in its pursuit of the records, despite the fact that its attorney has now viewed the recordings and the parties agree the recordings contain no such offensive content. When weighed against the likely harm to law enforcement's efforts to capture and convict sexual predators who target children, the counterfactual justification offered for the request clearly does not tip the balance towards overturning the record custodian's decision.

¶24 In applying the balancing test to the 2009 video, we conclude that the public interest in preventing release of specific police and prosecution strategies and techniques being taught and used in Wisconsin outweighs the general legislative presumption that public records should be disclosed. We are a State committed to open and transparent government, but if disclosure results in greater public harm than nondisclosure, the scale must tip in favor of nondisclosure, especially when sexual exploitation of vulnerable children is at risk. Because the 2009 video consists almost entirely of police tactics and specific prosecution strategies in cases involving sexual exploitation of children, disclosure would result in public

17

harm. The public policy factors favoring nondisclosure thus overcome the presumption in favor of disclosure. The record custodian gave specific reasons for the decision not to disclose the 2009 recording, and we conclude the reasons given were legally sufficient and sound.[10]

---

[10] While excerpts of the recording may fall beyond the public policy considerations favoring nondisclosure, which ordinarily results in the release of a redacted version under Wis. Stat. § 19.36(6), our viewing of the recording validates the custodian's assessment that a redacted version would be meaningless to the viewer. See John C. v. Martha A., 592 N.Y.S.2d 229, 235-36 (Civ. Ct. 1992) (where "entire court file is permeated with confidential" information, no part can be opened for viewing); cf. Am. Civil Liberties Union v. Dep't of Defense, 543 F.3d 59, 84 (2d Cir. 2008) (affirming district court order releasing certain redacted photographs depicting abuse of detainees at military prison, but mentioning without objection that "[w]here 'individual recognition could not be prevented without redaction so extensive as to render the images meaningless,' the court ordered those photographs to be withheld"), vacated on other grounds 558 U.S. 1042 (noting intervening change in federal law); Harwood v. McDonough, 799 N.E.2d 859, 866-70 (Ill. App. Ct. 2003) (affirming withholding of report under Illinois open records law where trial court "concluded that plaintiff was not entitled to a redacted report . . . if the result of the redaction was a document consisting of blank pages, along with meaningless pronouns and articles such as the words 'and,' 'or,' 'but,' etc."); Kestenbaum v. Mich. State Univ., 327 N.W.2d 783, 788 n.10 (Mich. 1982) (observing that "redaction of the exempt information——names and addresses of students——[under personal privacy exemption in Michigan open records law] would render the computer tape useless to plaintiff Kestenbaum," who sought to use source for university directory to create political mailing list). But cf. State ex rel. Pietrangelo v. Avon Lake, 2016-Ohio-2974, ¶35, 55 N.E.3d 1091 ("As we noted in . . . rejecting the . . . argument that the remainder of a redacted document would be 'meaningless,' there is no 'exception to the explicit duty in [the Ohio public records law] for public offices to make available all information that is not exempt after redacting the information that is exempt.'" (quoting State ex rel. Anderson v.

(continued)

18

## 2. 2013 Recording

¶25 In the 2013 recording, Attorney Schimel discussed a high-profile sex extortion case where a high school student victimized dozens of minors before a single victim reported the abuse. Attorney Schimel recounted the background, the investigation, the charging decisions, the attempt to keep the victims' identities confidential, the impact on the case when a breach of that confidentiality revealed the identity of all of the victims, the negative effects the disclosure of the identities caused, and his thoughts and strategies for prosecution.

¶26 Before we apply the balancing test, we analyze whether the common law exception to disclosure for a prosecutor's case files, discussed in Foust, applies to these facts. See Foust, 165 Wis. 2d at 433-35. Foust held that a district attorney's closed files were not subject to the Public Records Law based on the broad discretion a district attorney has in charging, the confidential nature of the contents of a file, and the threat disclosure poses to the orderly administration of justice. Id.

¶27 The 2013 video, of course, is not a prosecutor's typical paper case file. Rather, the record is an oral, in-depth presentation by Attorney Schimel, who was the prosecutor in charge of the sex extortion case discussed. Attorney Schimel

---

Vermilion, 2012-Ohio-5320, ¶19, 980 N.E.2d 975)). Meaningless redaction is particularly applicable here where the records consist of video recordings. The nondisclosable content on the videos permeates the recordings, making redaction futile.

19

shared his thought processes for charging and walked through the case from the beginning to the end. The presentation is in great respect the oral equivalent of a prosecutor's closed case file. The same rationale asserted in Foust to protect closed prosecutorial case files from disclosure under public records requests applies to the video here. Attorney Schimel's oral presentation included his analysis and impressions regarding charging and how to charge, a concept Foust labeled as confidential. Foust, 165 Wis. 2d at 433-35. The presentation also addressed issues relating to confidentiality of victims' identities and statements, which parallels Foust's concerns about anonymous statements and informants' statements. See id. at 435. Attorney Schimel discussed what would equate to "historical data leading up to the prosecution," which Foust expressed should be protected from public disclosure. Id. Based on these similarities, it would be illogical to conclude that a paper accounting of a district attorney's discretionary processes must be kept confidential but an oral accounting of the same, given in a confidential setting, need not. It is the nature of the record, rather than its form or location that matters. See Nichols, 199 Wis. 2d at 270, 274-75. ("To conclude otherwise would elevate form over substance."); see also Portage Daily Register v. Columbia Cty. Sheriff's Dep't, 2008 WI App 30, ¶¶18-19, 21-22, 308 Wis. 2d 357, 746 N.W.2d 525 (declining to allow sheriff's department to rely on Foust exception as basis for withholding report merely because it was forwarded to district attorney's office); Bldg. & Constr. Trades

20

Council of S. Cent. Wis. v. Waunakee Cmty. School Dist., 221 Wis. 2d 575, 587 n.3, 585 N.W.2d 726 (Ct. App. 1998) (distinguishing private records from public records).   The substance of this 2013 video contains the same discretionary content found in a prosecutor's file; therefore, the Foust common law exception renders the 2013 video exempt from disclosure under Wisconsin's Public Records Law.

¶28 Our analysis could end here because the common law exception applies.  This case, however, involves a public policy consideration of constitutional significance, and we therefore choose to proceed to an application of the public policy balancing test.  First, again, Attorney Schimel is a public official, a factor weighing in favor of disclosure.  Second, the content of the video, like the 2009 video, contains prosecution strategies and law enforcement tactics, which, as Linzmeyer explains, weighs in favor of nondisclosure.  See Linzmeyer, ¶¶32-33.  Third, the 2013 video discusses the victims of the sex extortion case and the devastating impact of these crimes, especially after the victims' identities were discovered.  Wisconsin's constitutional commitment to the fair treatment of victims and their privacy rights, together with this court's commitment to minimizing victims' suffering, weigh in favor of nondisclosure.  Although we cannot always protect victims from re-traumatization or additional suffering, the circumstances here clearly allow us to do so.

¶29 Although we review the record custodian's decision, we briefly explain why the four reasons the circuit court gave for

overturning the custodian's decision are inadequate and erroneous.  We do so because the Democratic Party relies on the circuit court's reasoning to advance its position that the 2013 video should be disclosed.  First, the fact that no specific names are used on the video does not render the victims unidentifiable.  Disclosing the recording would reignite interest in the case and allow identification in the same way it occurred the first time around.  There is sufficient factual detail in the recording to easily connect the dots to identify the dozens of victims, who would be re-traumatized should this case result in a repeat exposure of their identities almost a decade after these events occurred.  Disclosure leading to re-victimization would run afoul of Wisconsin's constitutional commitment to treating victims with "fairness, dignity and respect for their privacy."  Wis. Const. art. I, § 9m.  Further, the victims involved here were all child victims who deserve special treatment and protection with an emphasis on keeping their identities confidential, "especially in sensitive cases." See Wis. Stat. § 950.055(1).  This court will "make every effort to minimize further suffering by crime victims."  Schilling, 278 Wis. 2d 216, ¶26.

¶30 Second, the circuit court's reasoning that the victims' reactions to the crimes were "perfectly natural" and would not be surprising to anyone is not a relevant factor in weighing disclosure over nondisclosure.  Whether a victim's reaction is natural or excessive should not be a justification for re-traumatizing child victims of sensitive crimes.  What

must be considered is whether the victims will be re-traumatized by renewed suffering as a result of an additional violation of their privacy.

¶31 Third, the rationale that disclosure would help parents protect their children from sexual predators is unconvincing. Although this video may contain limited helpful information on this topic, many other useful resources exist for parents but do not present the same threat of harm to victims. The DOJ makes available online materials helpful to concerned parents.[11] Local schools, communities, and police departments also offer a variety of helpful resources and seminars.[12]

¶32 Fourth, the fact that a significant amount of the information discussed in the recording had been previously disseminated seven or eight years ago, although "germane to the balancing test" see Linzmeyer, 254 Wis. 2d 306, ¶37, does not require disclosure. This information was disclosed almost a decade ago. As presented in the affidavit submitted by Jill J. Karofsky, Executive Director of the Office of Crime Victim Services, re-disclosing the details of a case typically re-traumatizes victims. Karofsky asserts that bringing new public attention to a case can be "crushing" for victims who have

---

[11] See Internet Crimes Against Children Task Force, Protect Kids Online Podcast (2016), https://www.doj.state.wi.us/dci/icac/protect-kids-online-pko-podcast.

[12] See, e.g., Internet Crimes Against Children, Milwaukee Cty., http://county.milwaukee.gov/InternetCrimesAgains9120.htm (last visited Dec. 19, 2016).

otherwise moved on from a case. It is not unreasonable——indeed, it comports with common sense——to expect additional harm will be inflicted on the victims every time a case such as this is publicized, especially if done in a high-profile way such as a lawsuit that is pursued through all three levels of Wisconsin's court system with much media attention. Moreover, releasing the 2013 video creates a real risk that future victims will not report crimes and will not cooperate with prosecutors. Effective prosecution depends upon victims reporting in the first instance and cooperating until the end of the case.[13]

¶33 In balancing the equally important public policies of openness of public records against the constitutional declaration demanding protection and fair treatment of victims, coupled with the need for victim reporting and cooperation in order to identify lawbreakers, we conclude that the Public Records Law did not require the record custodian to release the 2013 video. The video contains no misconduct or evidence

---

[13] This case is not about protecting an individual's privacy interest like in Linzmeyer, where the teacher objected to the release of a police report generated during an investigation of possible inappropriate actions between the teacher and some students. See Linzmeyer, 254 Wis. 2d 306, ¶31 (observing that the public interest in protecting the reputation and privacy of citizens is "not equivalent to an individual's personal interest in protecting his or her own character and reputation"). Rather, the case before this court is about the public interest in protecting the reputation and privacy of crime victims and the concomitant public policy that such protection will encourage victims to report crimes and cooperate in prosecution of criminals.

showing dereliction of duty. Rather, it contains an oral account of the prosecution of a high school student who sexually extorted dozens of his fellow students. The account was presented at a confidential prosecutor training seminar, and aside from the general presumption favoring disclosure, it has little public value. Disclosure would provide the public with Attorney Schimel's mental processes and thoughts with respect to a sex extortion case he prosecuted many years ago. Contrary to Foust, releasing the video would give the public insight into Attorney Schimel's discretionary charging decisions, and it would likely reignite the public and media outrage associated with the crimes at issue here. It would undoubtedly re-traumatize and harm the victims who were minors at the time of these crimes, and its disclosure would send a strong message to crime victims that the continued pain that sometimes accompanies the pursuit of justice does not end——even when a prosecution is complete and the case is closed. The balancing test clearly weighs in favor of nondisclosure and strongly overcomes the presumption favoring disclosure.

## III. CONCLUSION

¶34 Wisconsin and this court are firmly committed to open and transparent government. The denial of public access occurs only in exceptional cases. This case presents one of those exceptional situations. The two videos requested here do not contain any evidence of official misconduct. The circuit court, the court of appeals, this court, and the Democratic Party all agree on this point. Both the 2009 and 2013 videos arise from

confidential prosecutors' training sessions, and both videos contain instruction on prosecutorial strategies and law enforcement tactics. The 2013 recording is an accounting of a single case and the functional equivalent of a prosecutor's case file, which is exempt from disclosure under Foust. Further, it contains information, which, if released, would harm the public interest by re-traumatizing the victims and violating their privacy rights, contrary to the policies enshrined in our state constitution, statutes, and case law. In applying the balancing test required by Wis. Stat. § 19.35(1)(a), the DOJ record custodian gave specific reasons for nondisclosure, and our review independently demonstrates that the reasons proffered are sufficient and supported by the facts in this case. We reverse the decision of the court of appeals and deny the writ of mandamus.

*By the Court.*—The decision of the court of appeals is reversed.

26

¶35 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* Our "Sunshine Law," Wisconsin's public records law, is a core principle of democracy: "[T]he people must be informed about the inner workings of their government and . . . openness in government is essential to maintain the strength of our democratic society."[1]

¶36 The majority opinion eclipses the "Sunshine Law." It dims the lights on persons seeking information about Wisconsin government operations and——in the instant case——shuts the lights off on two records that show how district attorneys, charged with prosecuting all criminal actions within their prosecutorial units,[2] fulfill their duties.

¶37 The majority opinion completely bars release of then-Waukesha County District Attorney Brad Schimel's video presentations at two different educational conferences.[3]

---

[1] Linzmeyer v. Forcey, 2002 WI 84, ¶15, 254 Wis. 2d 306, 646 N.W.2d 811. See also Wis. Stat. § 19.31 ("[A]ll persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them.").

[2] Wis. Stat. § 978.05.

[3] Then-District Attorney Schimel's video presentations about former cases in his office raise an issue not discussed by the parties.

Supreme Court Rule 20:1.9(c), as it stands now, imposes on lawyers a duty of confidentiality to former clients. It is arguable that lawyers can publicly discuss former cases only with the informed consent of the client.

(continued)

1

¶38 The Department of Justice performs more than one task regarding the public records law. The legislature imposes duties on the Department of Justice regarding the public records law. The legislature established that "[a]ny person may request advice from the attorney general as to the applicability of [the public records law] under any circumstances," and the "attorney general may respond to" the request. Wis. Stat. § 19.39.[4] In

---

On July 21, 2016, this court denied Rule Petition 15-04, In the matter of the Petition to Modify SCR 20:1.9(c), which addressed a lawyer's duties to former clients. The petition proposed an amendment enabling an attorney to discuss a closed case at an educational seminar. For a discussion of the rule and the proposed amendment by the amendment's author, see Michael D. Cicchini, On the Absurdity of Model Rule 1.9, 40 Vt. L. Rev. 69 (2015).

The question whether a prosecutor may discuss a closed criminal case at an educational conference arose at the hearing on the rule petition. The discussants were not certain about who is the prosecutor's client. And, whoever the client may be, it is unclear whether a prosecutor must obtain informed consent before discussing the details of the criminal case.

The court denied the petition. The discussants at the hearing intimated that they may be providing further guidance on this issue.

[4] "The opinions and writings of the Attorney General have special significance in interpreting the Public Records Law, inasmuch as the legislature has specifically authorized the Attorney General to advise any person about the applicability of the Law." Milwaukee Journal Sentinel v. City of Milwaukee, 2012 WI 65, ¶41, 341 Wis. 2d 607, 815 N.W.2d 367 (2012); see also Schill v. Wis. Rapids. School Dist., 2010 WI 86, ¶106, 327 Wis. 2d 572, 786 N.W.2d 177 (2010); State v. Beaver Dam Area Dev. Corp., 2008 WI 90, ¶37, 312 Wis. 2d 84, 752 N.W.2d 295.

(continued)

the instant case, an employee of the Department of Justice is the custodian of the records requested and has refused to grant the request for release of the two videos at issue. The Department of Justice is also a defendant in the instant case. When the original request was made, Brad Schimel was the Waukesha County District Attorney, and was represented by the Department of Justice. Now, Brad Schimel is the Attorney General, head of the Department of Justice, and is represented by the Department of Justice.

¶39 I too wear more than one hat. I view the public records law from three vantage points. I have participated in numerous cases as a member of this court ruling on the interpretation and application of the public records law. These cases are precedent that binds us all. In my capacity as an elected official and custodian of records, I have been the recipient of numerous open records requests, to which I have responded by complying with the public records law (although the court has never ruled on whether the public records law is applicable to it). I am also a requester. I have made numerous

---

The attorney general also plays an enforcement role under the public records law when authorities deny open records requests. Wisconsin Stat. § 19.37(b) provides that after an authority denies access to a record, "[t]he requester may, in writing, request . . . the attorney general[] to bring an action for mandamus asking a court to order release of the record to the requester" and that the "attorney general may bring such an action." See also § 19.37(4) (attorney general may enforce forfeitures against a records custodian that "arbitrarily and capriciously denies or delays response to a request or charges excessive fees").

requests for court records (that is, records under the public law, especially those relating to the court system's fiscal status), to the Interim Director of State Courts, an employee of the supreme court, to which he has refused to respond. I have not sought a writ of mandamus. I have not requested the Attorney General or the Dane County District Attorney to bring an action for a writ of mandamus pursuant to Wis. Stat. § 19.37(1).

¶40 I write this dissent guided by these three viewing platforms——justice, records custodian, and requester.

¶41 The majority opinion follows the approach that the Department of Justice has been taking: Prevent release of the videos in their entirety. Do not adopt a redact and release approach.[5]

¶42 In this court, the Department of Justice again seeks to bar release of the two videos in their entirety. I agree with the circuit court and court of appeals that the Department of Justice has not provided evidence to support the nondisclosure of the videos. Instead, the Department of Justice relies on speculation, conjecture, and fear.

¶43 The Department of Justice has presented no evidence that the two videos reveal any investigation and prosecution practices not already known or knowable in the public sphere. The Department of Justice has presented no evidence that

---

[5] At the circuit court, the Department of Justice rejected the Democratic Party's suggestion that the circuit court consider redaction of certain parts of the videos.

information in the videos would hinder the state's ability to prosecute sex offenders. The Department of Justice has presented no evidence that the videos disclose personally identifiable information about the crime victims.

¶44 As an alternative to releasing the videos in their entirety, for the first time the Department of Justice asks a court to view the videos for redaction.

¶45 I would remand the cause to the circuit court to conduct proceedings to determine whether any part of the two videos should be redacted and the remainder released in compliance with the public records law.

¶46 I dissent because the majority opinion casts a long shadow on several principles of Wisconsin's public records law.

¶47 I state the principles that the majority opinion either ignores or jeopardizes, and then I discuss several of these principles more fully in addressing whether each video in the instant case should be released in whole or in part.

¶48 <u>Principle</u>: A "presumption of public access" governs every open records request. Wis. Stat. § 19.31.

¶49 <u>Principle</u>: The Wisconsin Legislature has provided few exceptions to disclosing records. Wis. Stat. §§ 19.35-.36. A court is to "narrowly construe any exceptions to the general rule of disclosure."[6]

---

[6] <u>Nichols v. Bennett</u>, 199 Wis. 2d 268, 273-74, 544 N.W.2d 428 (1996).

5

¶50 Principle: A court should not consider the identity of the requester or the requester's motive.[7] Wisconsin Stat. § 19.35(1)(i) provides in relevant part:

> Except as authorized under this paragraph, no request under pars. (a) and (b) to (f) may be refused because the person making the request is unwilling to be identified or to state the purpose of the request.[8]

¶51 The majority opinion speculates that there is a "partisan purpose" to these requests. Majority op., ¶23. This court should not superimpose its own theories of the requester's motives onto the requester. This court should be a force for lawfulness. This court should separate and distance itself from partisan politics.

¶52 A corollary of the majority opinion's view of the requester's motive is that the opinion rests on the idea that

---

[7] See, e.g., Juneau County Star-Times v. Juneau County, 2013 WI 4, ¶62, n.33, 345 Wis. 2d 122, 824 N.W.2d 457; Schill v. Wis. Rapids School Dist., 2010 WI 86, ¶10 n.10, 327 Wis. 2d 572, 786 N.W.2d 177.

[8] Nothing in the public records law or case law authorizes refusal in the instant case based on the identity of the requester or the purpose of the request.

The majority opinion (¶23) nonetheless relies on a single sentence in Hempel v. City of Baraboo, 2005 WI 120, 284 Wis. 2d 162, 544 N.W.2d 428, to justify scrutinizing the Democratic Party's request. Justice Prosser's opinion in Hempel, 284 Wis. 2d 162, ¶66, stated only that "[w]hen performing a balancing test, however, a records custodian almost inevitably must evaluate context to some degree."

To jump from considering "context" to concluding that the identity and reasons for the request in the instant case weigh in favor of nondisclosure contravenes the public records law and our precedent.

the requester agrees that the videos do not show any misconduct on the part of then District Attorney Schimel. Majority op., ¶22. The majority opinion further asserts that the requester agrees that the recordings do not contain any offensive comments. Majority op., ¶23. No such agreement about offensive comments appears in the record. Offensive comments, if any, are not an issue before this court.

¶53 Without any citation to Wisconsin's (or another jurisdiction's) statutes or case law, the majority opinion essentially states that because the videos show no misconduct or offensive comments, the public is not harmed by the non-disclosure. This proposition is not in keeping with Wisconsin's commitment to open government to enable the public to monitor and evaluate how government officials discharge their responsibilities.

¶54 <u>Principle</u>: Wisconsin Stat. § 19.36(6) requires a records custodian to disclose that part of a record that is subject to disclosure and redact (delete) information that is not subject to disclosure.[9] If the record is in an incomprehensible form or in a form that cannot be redacted without revealing nondisclosable information, a transcript of

---

[9] "[T]o the extent that [] privacy interests are implicated, they could be protected by a redaction of the Report in accordance with Wis. Stat. § 19.36(6)." <u>Linzmeyer</u>, 254 Wis. 2d 306, ¶40. <u>Cf.</u> Wis. Stat. § 801.21(4) (2015) (discussing motions to seal) ("In restricting access, the court will use the least restrictive means that will achieve the purposes of this rule and the needs of the requester.").

the record may be made and information redacted from the transcript. Wis. Stat. § 19.35(1)(e), (em).

¶55 Wisconsin Stat. § 19.36(6) provides for redaction as follows:

> (6) SEPARATION OF INFORMATION. If a record contains information that is subject to disclosure under s. 19.35(1)(a) or (am) and information that is not subject to such disclosure, the authority having custody of the record shall provide the information that is subject to disclosure and delete the information that is not subject to disclosure from the record before release.[10]

¶56 The majority opinion refers to this provision, the text of which governs the instant case. Majority op., ¶24 n.10. Rather than addressing this statutory provision directly, the majority opinion relegates the issue of redaction to a footnote and refers to cases from other jurisdictions that are inapposite and unpersuasive. Majority op., ¶24 n.10.

¶57 The majority opinion's refusal to adhere to Wis. Stat. § 19.36(6) contravenes the basic policy of the public records law: Disclosure is presumed and exceptions are narrowly construed. I shall discuss the issue of redaction further. See ¶¶80-96, infra.

¶58 <u>Principle</u>: The records custodian is obliged to state specific and sufficient reasons for refusing to release the

---

[10] <u>See also</u> Wis. Stat. § 19.36(1) ("Any record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under s. 19.35(1), except that any portion of that record which contains public information is open to public inspection as provided in sub. (6).").

record at issue.[11] If the custodian gives no reason or an insufficient reason, a writ of mandamus compelling the production of records may issue. In the instant case, I examine both the custodian's response and the Department of Justice's briefs filed in this court for specific and sufficient reasons for refusing to release the videos in their entirety.

¶59 Principle: "The process of police investigation is one where public oversight is important . . . and [is] generally [a] matter[] of public interest . . . ."[12]

¶60 Principle: "The United States Freedom of Information Act (FOIA), 5 U.S.C. § 552, does not apply to states."[13] The Department of Justice's 2015 Wisconsin Public Records Law Compliance Guide states that this court has declared that although "the public policies expressed in FOIA may be relevant to application of the common law balancing test . . . [g]enerally, the Wisconsin Public Records Law

---

[11] See Hempel v. City of Baraboo, 2005 WI 120, ¶¶25-26, 284 Wis. 2d 162, 699 N.W.2d 240; Portage Daily Register v. Columbia Cty. Sheriff's Dep't, 2008 WI App 30, ¶¶12-14, 308 Wis. 2d 357, 746 N.W.2d 525 (the specificity requirement is designed to provide the requester with sufficient notice of the grounds for denial to enable the requester to prepare a challenge); ECO, Inc. v. City of Elkhorn, 2002 WI App 302, ¶24, 259 Wis. 2d 276, 655 N.W.2d 510; Wisconsin Dep't of Justice, Wisconsin Public Records Law Compliance Guide 15-18 (Nov. 2015) , available at https://www.doj.state.wi.us/sites/default/files/dls/2015-PRL-Guide.pdf (last visited Dec. 20, 2016)..

[12] Linzmeyer, 254 Wis. 2d 306, ¶27.

[13] Wisconsin Dep't of Justice, Wisconsin Public Records Law Compliance Guide 2 (Nov. 2015).

9

provides for greater access to state governmental records than FOIA does to federal records."[14]

¶61 The majority opinion does not sufficiently caution that FOIA does not govern Wisconsin's public records law.

¶62 These principles inform my dissent.

¶63 Today, the majority opinion significantly dims the lights on transparency in government and shuts off some lights by concluding that the Department of Justice may withhold both of the videos in their entirety.

¶64 Because each video presents some different issues, I first address whether the 2009 video of then District Attorney Schimel's educational presentation should be released in whole or in part. I then examine whether the 2013 video of then-District Attorney Schimel's educational presentation should be released in whole or in part.

### I. The 2009 Video

¶65 The majority opinion rests on three grounds:

(A) It applies the common-law balancing test to determine whether the public interest in nondisclosure of the 2009 video outweighs the public interest in disclosure. Majority op., ¶16.

(B) It relies on the federal Freedom of Information Act (FOIA). Majority op., ¶13.

---

[14] Wisconsin Dep't of Justice, Wisconsin Public Records Law Compliance Guide 2 (Nov. 2015).

(C) It bars release of the 2009 video in its entirety, and refuses to consider redaction of any part of the video. Majority op., ¶24 n.10.

A

¶66 In barring release of the entire 2009 video, the majority opinion balances the presumption of and public interest in openness against the public interest in nondisclosure.

¶67 The public interest in the government's investigating and prosecuting criminal activity is "strong." Majority op., ¶13. The majority opinion considers the strong public interest in disclosing information about government operations to catch sexual predators who prey on children and to educate parents about sexual predators of children and their use of the internet.

¶68 In the instant case, the alleged countervailing public interest is that a record should not be disclosed when the record gives criminals information regarding law enforcement techniques and procedures in Waukesha County and Wisconsin that they could use to circumvent the law. Majority op., ¶¶16, 18.

¶69 The Department of Justice has the burden to show that the presumption of openness and the public interests favoring disclosure are outweighed by the public interests favoring secrecy. Majority op., ¶9.

¶70 The majority opinion supports its conclusion that the Department of Justice has met its burden with several arguments.

¶71 Several times it notes that the presentation on the video was given at a confidential training session for

11

prosecutors and victims' right advocates, with some police representatives present.[15] Majority op., ¶18. Despite the Department of Justice's assertion that these seminars are confidential and closed to persons not associated with prosecution and law enforcement, attendees at the presentation were not informed in the video or distributed materials that they were bound to secrecy.[16]

_____

[15] An affidavit of Ray Korte, the Director for the Wisconsin Department of Justice's Criminal Litigation Unit, is attached to the Department of Justice's Motion to Dismiss the Petition and Quash the Proposed Writ in the instant case. The affidavit states: "The attendees are almost exclusively prosecutors and DOJ staff. Former DAs and ADAs who continue to make themselves available as special prosecutors may also attend, but only if that person does not also provide defense attorney services." The affidavit further states: "The expectation of the presenters is that the audience is limited . . . and that the information shared is for use only by prosecutors and those assisting with prosecutions and investigations and, at times, by employees who aid crime victims."

[16] The circuit court impliedly found that, despite the Department of Justice's asserting that these seminars are closed to the public, attendees at the presentation were not bound to secrecy:

THE COURT:. . . What happens to the people like Mr. Verhoff and Mr. Kiefer who have flipped over to the defense side, are they under any obligation not to use any of this information in their pursuit of their client's causes?

[ASSISTANT ATTORNEY GENERAL]: Well, I guess I'll split that up. I don't know that there's any kind of agreement from these conferences. The understanding is these are for people who are in [sic] the prosecutorial side. But I guess it's always a risk whenever anyone knows something they'll flip and then for the other side at some point. . . .

12

¶72 As Judge Niess colorfully and correctly stated: The video really is "Investigating Child Predators 101."[17] The circuit court explicitly found that the videos repeat information that has been made public in several venues.

---

[17] The judge was apparently referring to "To Catch a Predator," a TV program that ran from 2004-2007. It was a reality television series that featured hidden camera investigations by the television program Dateline NBC. People were lured to meet with a decoy under the pretense of sexual contact with a minor and then were confronted on TV. In some episodes law enforcement officials were involved, leading to arrests. Wikipedia, To Catch a Predator, https://en.wikipedia.org/wiki/To_Catch_a_Predator (last visited Dec. 20, 2016).

A spin-off book, To Catch a Predator: Protecting Your Children from Online Enemies Already in Your Home, was published in 2007. See Publishers Weekly, Feb. 12, 2007.

Indeed, the internet is replete with readily available information substantially similar to that in the videos.[18]

¶73 That information in the 2009 videos at issue is publicly known or publicly available weighs in favor of release. Linzmeyer v. Forcey, 2002 WI 84, ¶37, 254 Wis. 2d 306, 330, 646 N.W.2d 811, 821. The majority opinion pays lip service to this principle but does not apply it to the instant case. See majority op., ¶21.

¶74 After looking at the video and examining public sources of information about law enforcement techniques in capturing sexual predators of children using the internet, I

---

[18] See, e.g., Louise Tickle, How Police Investigators Are Catching Paedophiles Online, The Guardian (Aug. 22, 2012, 4:00 AM), https://www.theguardian.com/social-care-network/2012/aug/22/police-investigators-catching-paedophiles-online ("When caught . . . they say things like 'it was just a fantasy' but you find them with lubricants and toys . . . ."); Walter Glenn, How to Hide Your Porn, Lifehacker (Feb. 20, 2014, 4:30 PM), http://lifehacker.com/how-to-hide-your-porn-1525454917; Paula McMahon, Feds: Broward Child Porn Suspect Used Encryption To Hide Files, SunSentinel (Sep. 23, 2015, 12:52 AM), http://www.sun-sentinel.com/local/broward/fl-child-porn-encryption-20150922-story.html; Susan Saulny, Sex Predator Accusations Shake a Wisconsin Town, N.Y. Times (Feb. 10, 2009), http://www.nytimes.com/2009/02/11/us/11wisconsin.html?_r=0 (describing a high-profile Wisconsin case that is the subject of the 2013 video and how the perpetrator organized files on his computer); Ty E. Howard, Don't Cache Out Your Case: Prosecuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files, 19 Berkeley Tech. L.J. 1227 (2004) (discussing how forensic investigators examine caches containing internet files and the legal factors and defenses in possession cases); Jason B. Sheffield & Douglas N. Peters, From Chat Room to Courtroom: The Internet, Experts, and Entrapment, Champion, Aug. 2015, at 34 (discussing how to use evidence to mount an entrapment defense and how to distinguish between fantasy roleplay and predatory behavior).

14

conclude, as did the circuit court and court of appeals, that the Department of Justice has not demonstrated that the contents of the 2009 video are not publicly known or that the contents of the 2009 video reveal any information that is peculiar to Waukesha County or Wisconsin prosecutions.

¶75 Neither the Department of Justice nor the majority opinion offers an illustration (even a guarded one) of any local law enforcement technique that is distinctively used in Waukesha County or the state or explains how the release of the 2009 video would enable a criminal to circumvent Wisconsin law. The whole discussion that releasing the 2009 video would create a significant risk is ipse dixit; that is, there is a significant public risk to effective law enforcement only because the Department of Justice and the majority opinion say so. Majority op., ¶¶19, 20.

¶76 The law enforcement interest that the Department of Justice and the majority opinion identify (but do not demonstrate) does not overcome the statutory presumption of openness in the instant case. In any event, the majority opinion should not be read as adopting a per se rule that any time a requested record implicates any law enforcement technique or prosecutorial strategy, the record will be withheld from public view. Indeed, the Department of Justice's brief explains that it is not asking for any sort of blanket exception. Rather, the Department of Justice's position is that law

enforcement training records must be analyzed on a case-by-case basis.[19]

B

¶77 I turn now to the Department of Justice and majority opinion's reliance on the federal Freedom of Information Act (FOIA) and the Linzmeyer decision to support their conclusion. Majority op., ¶¶13, 18. This reliance is misplaced.

¶78 Wisconsin's public records law provides for greater access to records than FOIA provides. "Wisconsin courts have more effectively enforced the public records statute . . . than federal courts have enforced the federal Freedom of Information Act." Wis. Family Counseling Servs., Inc. v. State, 95 Wis. 2d 670, 672-73, 291 N.W.2d 631 (Wis. App. 1980) (also noting that the language in Wisconsin's public records law provides for greater access than FOIA, citing Constance Y. Singleton & Howard O. Hunter, Statutory and Judicial Responses to the Problem of Access to Government Information, 1979 Det. Coll. L. Rev. 51, 70-71).

¶79 FOIA is not binding on Wisconsin records custodians or courts, and it does not lower the bar on when law enforcement records may be withheld in Wisconsin. Although FOIA may assist in determining "whether the presumption of openness in law enforcement records is overcome by another public policy,"[20] its use is limited.

---

[19] Reply Brief of the Wis. Dep't of Justice & Kevin Potter at 5.

[20] Linzmeyer, 254 Wis. 2d 306, ¶33.

C

¶80 Without reference to any Wisconsin case law directing a records custodian to redact any information that should not be disclosed, the majority opinion declares that the entire video is barred from public view. The majority opinion relegates the subject of redaction to a footnote.

¶81 The majority opinion baldly asserts that redaction is not an option because the records at issue are videos, rather than text documents, and cannot be redacted. Majority op., ¶24 n.10. Nothing in the record reveals whether this assertion is true. If it is true, a transcript can be prepared and redactions shown. Wis. Stat. § 19.35(1)(em). It appears, however, that videos can be redacted.[21]

¶82 The majority opinion also states, without any support, that releasing the 2009 video with redactions would present a video that would be "meaningless."

¶83 The majority opinion does not attempt to clarify what it means by "meaningless." It does, however, cite to an Illinois appellate court decision. Majority op., ¶24 n.10. The Illinois court concluded that a redacted document would be meaningless when "the result of the redaction was a document consisting of blank pages, along with meaningless pronouns and

---

[21] See, e.g., Schwartz v. United States Drug Enf't Admin., No. 13CV5004CBARML, 2016 WL 154089, at *20 (E.D.N.Y. Jan. 12, 2016) ("[T]he DEA has not overcome FOIA's presumption of disclosure and must disclose the requested portion of the Video, subject only to the redaction discussed above.").

17

articles [sic] such as the words 'and,' 'or,' 'but,' etc."
Harwood v. McDonough, 799 N.E.2d 859, 866 (Ill. App. 2003).

¶84 In the instant case, redactions would not result in a meaningless document as defined by the Illinois court. We know because the Department of Justice tells us so. A records custodian seeking to withhold a record may satisfy its burden by searching the record and giving a reasonably detailed explanation for refusing to release all or part of the record. "If a custodian denies a public records request, he or she must give specific reasons for denying access, and it is the role of the court to determine whether the reasons are sufficient." Majority op., ¶9.

¶85 In fulfilling its obligation to give specific and sufficient reasons for refusing to turn over the 2009 video in its entirety, the Department of Justice cites in its opening and reply briefs portions of the 2009 video that the Department of Justice contends should not be disclosed. It cites to comments in the 2009 video about undercover strategies, helpful types of evidence, Department of Justice litigation defenses, technology and creation of files, and examples from sensitive cases.[22]

¶86 These specific portions of the 2009 video cited by the Department of Justice, should I even agree that they should be redacted (and I do not), run about 30 minutes. The entire 2009

---

[22] See Corrected Opening Brief of the Wis. Dep't of Justice & Kevin Potter at 3-4, 17; Reply Brief of the Wis. Dep't of Justice & Kevin Potter at 5-6.

video runs about 74 minutes.[23] Thus, over half of the video presentation apparently would be available for the public.

¶87 Simple arithmetic undercuts the majority opinion's assertion that the videos would be meaningless if redacted. Furthermore, my in camera view of the video contravenes the majority opinion's unsupported assertion, majority op., ¶24 n.10, that "the nondisclosable content on the videos permeates the recordings, making redaction futile."

¶88 The Department of Justice has not demonstrated that the 2009 video is permeated with information that must be redacted under its view of the public records law and that redaction would render the video meaningless.

¶89 Addressing redaction, the majority opinion does not rely on the Wisconsin redaction statute, Wis. Stat. § 19.36(6), or Wisconsin precedent. Indeed, the majority opinion relies only on distinguishable out-of-state cases. See majority op., ¶24 n.10.

¶90 The majority opinion's reliance, for example, on John C. v. Martha A., 592 N.Y.S.2d 229 (N.Y. Civ. Ct. 1992), is misplaced. John C. involved a New York City Municipal Court landlord-tenant dispute and was not an open records case. The landlord's counsel provided the court information about the medical condition of the tenant's husband; the confidential medical information was obtained illegally and permeated the whole court file. John C., 592 N.Y.S.2d at 235.

_____

[23] The Department of Justice takes a similar approach to withholding the 2013 video, as well.

19

¶91 In <u>Kestenbaum v. Michigan State University</u>, 327 N.W.2d 783, 788 n.10 (Mich. 1982), without discussion or explanation, the Michigan court stated that a computer tape should not be released because redaction would render the tape "useless" to the requester. The majority opinion in the instant case extracts this language from the Michigan case that appears to support the majority opinion's view without comparing the Michigan and Wisconsin public records laws and without analyzing the meaning of "useless" and whether redaction makes the 2009 video "useless" in the instant case.

¶92 In contrast, in <u>State ex rel. Pietrangelo v. City of Avon Lake</u>, 55 N.E.3d 1091, ¶35 (Ohio 2016), the Ohio supreme court noted that a redacted document must be released even if "meaningless": Ohio (like Wisconsin) has no law allowing a public official to refuse to release a redacted document even if it is "meaningless" or "useless."

¶93 The majority opinion also relies on a federal Second Circuit Court of Appeals case, <u>American Civil Liberties Union v. Department of Defense</u>, 543 F.3d 59 (2nd Cir. 2008), for the proposition that a redacted record need not be released if the redactions render it meaningless. This case provides little, if any, support for the majority opinion.

¶94 Using FOIA, the American Civil Liberties Union attempted to obtain photographs of detainees held by government forces abroad depicting prisoner abuse by these forces. The defendant government entities justified nondisclosure under 5 U.S.C. § 552(b)(6) and (7)(C).

¶95 FOIA provides for redaction. See 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

¶96 Both the federal district court and federal court of appeals ordered redacted photographs released in American Civil Liberties Union.[24] The courts discussed redaction, but most photographs were released without redaction. The Second Circuit court noted that "[w]here individual recognition could not be prevented without redaction so extensive as to render the images meaningless" the district court properly withheld those photos, but the Second Circuit court agreed with the district court's dismissal of "speculative [] risk[s] that persons depicted in the photographs might recognize themselves or be recognized by members of the public in spite of the redactions." Am. Civil Liberties Union, 543 F.3d at 84. No further discussion of redaction ensued.[25] Unlike the Second Circuit court's opinion in the American Civil Liberties Union case, our court's majority

---

[24] For a supplemental order by Judge Hellerstein in the Southern District of New York releasing photographs, see American Civil Liberties Union v. Department of Defense, No. 04Civ.415(AKH), 2006 WL 1722574 (S.D.N.Y. 2006).

[25] On petition for a writ of certiorari, the United States Supreme Court "vacated" the judgment and remanded the case to the federal circuit court of appeals. The United State Supreme Court did not remand the case under FOIA. Rather, the remand was "for further consideration in light of Section 565 of the Department of Homeland Security Appropriations Act, 2010 . . . ." Dep't of Defense v. Am. Civil Liberties Union, 558 U.S. 1042 (2009).

21

opinion refusing to redact and barring disclosure is based on speculative risks.

¶97 In sum, in applying its amalgamation of public records law to prohibit release of the 2009 video in its entirety, the majority opinion (like the Department of Justice) dismisses valid public policy concerns while embracing hollow talk lauding the secrecy of publicly known prosecutorial strategy and police techniques.

## II. The 2013 Video

¶98 The 2013 video is a recording of a presentation that then Waukesha County District Attorney Schimel gave to share the knowledge he gleaned during the prosecution of Anthony Stancl, a high-profile sex extortion case. The presentation is essentially a "war story" depicting how the District Attorney handled the case, including the background of the case, the investigation, the charging decisions, the impact on victims, and more. Majority op., ¶25. This story has already been publicly divulged by then-District Attorney Schimel and was reported widely in Wisconsin and across the country.[26]

¶99 The majority opinion focuses its discussion justifying withholding the 2013 video in its entirety on two grounds:

---

[26] The circuit court reported that it "did a Google search of the perpetrator here and in a half a second came up with 15,300 entries about this case." Counsel for the Department of Justice agreed with the circuit court that coverage of the Stancl case was widespread. My search located many articles, as well, including the following: Susan Saulny, Sex Predator Accusations Shake a Wisconsin Town, N.Y. Times (Feb. 10, 2009), http://www.nytimes.com/2009/02/11/us/11wisconsin.html?_r=01.

(A) A common-law exception for prosecutors' case files, as described in State ex rel. Richards v. Foust, 165 Wis. 2d 429, 477 N.W.2d 608 (1991). Majority op., ¶27.

(B) Victims' rights, as set forth in Article I, Section 9m of the Wisconsin Constitution and Wis. Stat. §§ 950.04(1v)(ag),[27] .055.[28] Majority op., ¶14.

A

¶100 The majority opinion characterizes the 2013 video as an "oral equivalent" of the district attorney's prosecutorial files and reads the Foust case as not subjecting the district attorney's closed files to the public records law "based on the broad discretion a district attorney has in charging, the confidential nature of the contents of a file, and the threat disclosure poses to the orderly administration of justice." Majority op., ¶26 (citing Foust, 165 Wis. 2d at 433-35).

¶101 This extension of Foust's common-law exception to the public records law to the instant case overlooks the factors

---

[27] Section 950.04(1v)(ag) provides:

Victims of crimes . . . [are] [t]o be treated with fairness, dignity, and respect for . . . privacy by public officials, employees, or agencies. This paragraph does not impair the right or duty of a public official or employee to conduct his or her official duties reasonably and in good faith.

[28] In addition to factoring in victims' rights, the majority's application of the balancing test to the 2013 video raises the same issues that I discuss above. As an alternative to relying on Foust, the majority opinion also applies the balancing test.

23

that drove the Foust decision: protecting confidential informants' identities and protecting prosecutors' discretion. Foust, 165 Wis. 2d 429, 435-37. The Department of Justice has not demonstrated that either of these factors is present in the instant case.

¶102 Foust did not enshrine the entire prosecutorial file beyond the public's view. This court has recognized that not all documents in a prosecutor's file are subject to the common-law exception to disclosure. See Nichols v. Bennett, 199 Wis. 2d 268, 544 N.W.2d 428 (1996) (the document's nature and not its location determines its status under the public records law). "[D]ocuments integral to the criminal investigation and prosecution process are protected 'from being open to public inspection.'" Nichols, 199 Wis. 2d at 275 n.4 (quoting Foust, 165 Wis. 2d at 434).

¶103 The Department of Justice has not shown that the content of the 2013 video is integral to the closed case or to future open criminal investigations, especially in light of the publicity surrounding Stancl's case.

¶104 The Department of Justice's brief, citing Linzmeyer, 254 Wis. 2d 306, ¶26, acknowledges that balancing the public policies for and against release requires "special care."[29] Yet the Department of Justice does not take and has not taken "special care." The Department of Justice acknowledges that the records custodian must demonstrate how the release of the

---

[29] Corrected Opening Brief of the Wis. Dep't of Justice & Kevin Potter at 8.

24

requested information will create a risk of "circumvention" of the law.[30] The Department of Justice does not do so, and neither does the majority opinion.

¶105 My objection to extending Foust to the instant case does not elevate form (files vs. oral presentation) over substance (content of the video). Rather, the majority opinion's extension of Foust violates the essence of the Foust decision and contravenes the express legislative mandate that exceptions to open records be construed narrowly. See Nichols, 199 Wis. 2d at 273; Fox v. Bock, 149 Wis. 2d 403, 411, 438 N.W.2d 589 (1989).

B

¶106 Protection of crime victims is an important consideration in the instant case under the Wisconsin constitution, statutes, and case law. There is no disagreement on this point.

¶107 In performing the balancing test to justify nondisclosure of the 2013 video on grounds of protecting crime victims, the majority opinion (like the Department of Justice) views the protection of crime victims as outweighing the presumption of openness of public records in the instant case.

¶108 As he was trying this case, the then-District Attorney wanted to get the information he learned in prosecuting the

---

[30] Corrected Opening Brief of the Wis. Dep't of Justice & Kevin Potter at 13-14.

Stancl case to kids and parents.[31] The circuit court agreed that the information could be useful for parents. The majority opinion, in contrast, justifies not releasing the videos by stating that many other useful resources exist for parents. See majority op., ¶31.

¶109 The majority opinion accepts the Department of Justice's view of the balancing. But the Department of Justice and the majority opinion ignore the comments of the Attorney General, a key figure in the administration of the public records law, with regard to the relationship of the public records law and the laws on protecting crime victims.

¶110 The then-Attorney General explained in 2012 that neither the constitutional provisions nor the Wisconsin statutes relating to crime victims factor into the open records balancing test any more than other factors.[32]

---

[31] Michael Joseph Gross, Sextortion at Eisenhower High, GQ (June 30, 2009), available at http://www.gq.com/story/wisconsin-high-school-sex-scandal-online-facebook ("Brad Schimel, Waukesha County D.A., says he hopes the Stancl case will be 'a two-by-four upside the head to parents,' encouraging them to get involved in their children's lives online."); Laurel Walker, Stancl gets 15 years in prison in Facebook coercion case, Milwaukee Journal Sentinel (Feb 24, 2010), available at http://archive.jsonline.com/news/waukesha/85252392.html ("After the sentence was imposed, with Stancl taken immediately to prison, [then-District Attorney] Schimel said outside the courtroom that he wasn't sure this case, with all its publicity, was getting through to kids, because new cases of sexting have continued to occur. 'I'm just not sure they're hearing this message,' he said. 'I hope their parents are.'").

[32] This memorandum dated April 27, 2012, is available at https://www.doj.state.wi.us/sites/default/files/dls/act-283-advisory.pdf.

(continued)

26

¶111 In April 2012, then-Attorney General J.B. Van Hollen advised interested parties about the relation of the public records law and the victim rights legislation as follows:

> The new statutory provisions created by Act 283 [relating to victim rights] do not prohibit law enforcement agencies or other public entities from disclosing personal identifiers of crime victims and witnesses in response to public records requests. . . .
>
> Privacy, confidentiality, and safety concerns related to victims and witnesses have been and should continue to be carefully considered by records custodians when making public records release decisions, however. These important concerns generally are addressed in case-by-case application of the public records balancing test which, under appropriate circumstances, allows sensitive information to be redacted or withheld.

The Wisconsin Department of Justice, echoing Wis. Stat. § 950.04(1v)(ag), (see ¶99 n.27, supra), quoted and reaffirmed Attorney General Van Hollen's view in Wisconsin Public Records Compliance Guide at 39 (Nov. 2015).[33]

---

See ¶38 n.4, supra, explaining that the court gives special weight to the Attorney General's opinions and writings on the public records law.

[33] The Compliance Guide states at 39:

2011 Wisconsin Act 283 created three statutory provisions, Wis. Stat. §§ 950.04(1v)(ag), (1v)(dr), and (2w)(dm), related to disclosure of personally identifying information of victims and witnesses by public officials, employees or agencies, which were intended to protect victims and witnesses from inappropriate and unauthorized use of their personal information. These statutes are not intended to and do not prohibit law enforcement agencies or other public entities from disclosing the personal identities of crime victims and witnesses in response

(continued)

27

¶112 Regarding crime victims, the majority opinion does not hold the Department of Justice to the principle that the records custodian must state specific and sufficient reasons for nondisclosure and that a court must determine whether the reasons given are sufficient. Majority op., ¶¶28-33. The majority opinion departs from this precedential requirement without reason.

¶113 No victims are identified in the video. Both the circuit court and the Assistant Attorney General representing the Department of Justice agreed that nothing in the video suggests who the victims were. To support its conclusion that release of the 2013 video has the potential for re-victimizing crime victims and imposes too high a cost on crime victims in the instant case, the Department of Justice and the majority opinion rely on Jill J. Karofsky's affidavit. Jill Karofsky is Executive Director of the Office of Crime Victim Services in the Department of Justice.

¶114 Director Karofsky is very knowledgeable about victims. Her affidavit, however, makes generalized statements about crime victims without addressing the 2013 video and without taking a position on whether the video at issue should be disclosed.

¶115 For example, Director Karofsky's affidavit fails to consider the number of victims in the Stancl case, the extensive

---

to public records requests, although those public records duties should continue to be performed with due regard for the privacy, confidentiality, and safety of crime victims and witnesses.

28

publicity that the case received, the years that have elapsed since the incident, whether any of the 39 victims could be identified in the video, and the difficulty or ease of identifying the victims by examining past publicity of the case.[34]

¶116 The Department of Justice's reply brief states: "It is the Department as a whole——not Karofsky——that concluded that these generally applicable considerations militate against disclosure of these particular videos."[35] Instead of complying with the requirement of specificity, the Department of Justice's brief asks this court to give deference to the Department when it is protecting crime victims.

¶117 The Department of Justice has not fulfilled its burden to show that the public interests favoring disclosure are outweighed by the public interests favoring secrecy in the instant case justifying barring release of the 2013 video in its entirety. See majority op., ¶9.

¶118 The entire 2013 video runs a little over 70 minutes. The 2013 video, like the 2009 video, should be reviewed on

---

[34] As the majority opinion acknowledges, the victims' identities were already disclosed publicly years ago. This consideration weighs in favor of disclosure of the 2013 video, or at least parts thereof. Linzmeyer, 254 Wis. 2d 306, ¶37.

[35] Reply Brief of the Wis. Dep't of Justice & Kevin Potter at 6 n.3.

remand by the circuit court to determine which parts of the 2013 video, if any, should be redacted.[36]

¶119 By concluding that the protection of crime victims in the instant case overcomes the legislatively created presumption of openness, the majority opinion offers no workable limits on when protection of crime victims will or will not outweigh the presumption of openness. When a victim of a crime is not identified but is implicated in the record, what is the weight of the thumb on the scale for nondisclosure? Does the majority opinion intend to promulgate a per se rule that protection of crime victims who are not identified but may be implicated always defeats the presumption of openness of records? I think not.

¶120 I would remand the cause to the circuit court to conduct proceedings to determine whether any part of the 2013 video should be redacted, and what part of the video should be released in compliance with the public records law.

* * * *

¶121 I write separately because the majority opinion fails to follow principles and procedures the legislature and courts have set forth and because it reaches the wrong result. Along the way to reach its result, the majority opinion extends exceptions to the public records law and, in effect, renders meaningless the statutory direction to redact.

---

[36] The 2013 video describes an undisclosed and traumatic fact about one of the unidentified victims. This reference might be redacted.

¶122 Because the majority opinion cannot point to a basis for prohibiting redaction in the instant case, I would remand the cause to the circuit court to redact any information justified under the public records law and release the rest of the videos.

¶123 The question for me is: What has the majority achieved with its opinion grounded in speculative, abstract, and unsubstantiated fears? The answer for me is: A dimming of the light on public oversight of government, especially in matters pertaining to criminal justice.

¶124 For the reasons set forth, I write separately.

¶125 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.